STATE v. ARTHUR HORNER.

(Filed 21 November, 1917.)

1. **Intoxicating Liquors—Criminal Law—Manufacture, Aiding—Evidence—Trials—Questions for Jury.**

It is not necessary for a conviction under the provisions of Public Laws 1917, chap. 157, making the distilling or manufacturing, etc., of spirituous or malt liquors or intoxicating bitters within the State unlawful, including within its express terms those who aid, assist, or abet therein, that the liquor should have been actually manufactured or the product finished; and where there is evidence tending to show that such manufacture had been in progress, but had been suspended by the arrest of the prisoner, and that he was aiding or assisting therein, it is sufficient to be submitted to the jury and to sustain conviction of the offense charged.

2. **Same—Guilty Knowledge.**

Upon the evidence in this case, tending to show that the defendant went through an obscured pass with his wagon, at a propitious hour, to a place where a still had been but recently in operation; of the whistling signals he gave of his approach; that he was armed and had certain implements with him used in distilling; that when he was arrested, some one hastily removed the still and most of its accessories, leaving some beer there and some burned hoops and wood, etc., and that he had in his wagon some tow sacks to cover up or conceal the beer, and stated he had been hired to haul it away, etc.: *Held,* sufficient for the jury upon the question of defendant's guilty knowledge that in removing the beer he was participating or aiding in the unlawful manufacture and distillation of spirituous liquors prohibited by the statute. Public Laws 1917, chap. 157.

3. **Same—Removal of Liquor—Innocent Intent.**

Where there is evidence of defendant's guilty knowledge in aiding in the distilling or manufacturing of intoxicating liquor prohibited by Public Laws 1917, chap. 157, by hauling it away, and also consistent with his innocence in merely hauling away the remnants after the illegal purpose

had been accomplished or frustrated, without intention of taking part or aiding in its manufacture, the question of his guilt or innocence is one for the jury, under proper instructions.

4. **Intoxicating Liquor—Indictment—Manufacture, Aiding—Degrees of Offense—Conviction.**

Upon a charge in an indictment for manufacturing liquor, etc., under Public Laws 1917, chap. 157, the defendant may be convicted of the second degree of the offense—*i. c.*, aiding or abetting its manufacture.

5. **Instructions — Requested Instructions — Substantial Compliance—Appeal and Error.**

Where the trial judge substantially gives a correct request for special instruction, without weakening its effect, it is sufficient.

6. **Criminal Law—Bill of Particulars—Statutes.**

The remedy for a defendant in a criminal action, when the indictment does not sufficiently inform him of the particular charge against him to enable him to prepare his defense, is to apply to the court, acting in its discretion, to require the solicitor to furnish him a bill of particulars. Revisal, sec. 3244.

7. **Criminal Law—Instructions—Expression of Opinion—Pleas—Not Guilty—Denial as to Evidence.**

A plea of not guilty to a criminal charge is a denial of the truth of all of the evidence introduced by the State on the trial tending to show guilt; and where defendant is tried under an indictment for the manufacture of spirituous liquors, etc., or aiding, etc., therein, prohibited by Public Laws 1917, chap. 157, it was error in the trial judge to state in his charge to the jury that the defendant had testified to material and prejudicial facts and made declarations tending to show his guilt, when such was only the evidence of the State's witnesses, whose credibility was for the jury to pass upon, and constitutes reversible error, however inadvertently committed.

INDICTMENT tried before *Long, J.,* at August Term, 1917, of MOORE.

Defendant was convicted, and appealed from the judgment.

The charge against the defendant was that he had manufactured liquor, contrary to the statute prohibiting the same. There was evidence tending to show that defendant drove his father's wagon to the place of manufacture, over "a dim road," when it was dark. He left the road and drove to a house nearby and whistled two or three times, and then drove to the branch near the still, or where the still had been. He then left his wagon and went to the place where there were five stands of beer. He returned to the wagon to quiet his horses, and then went back to where the beer was, and he was removing a plank from the top of the beer barrels when he was arrested by the officers who had been watching his movements. He stated that he was paid by a man for hauling the beer away. He had a blanket and oil-cloth, which he stated that he intended to use for covering the barrel "to prevent the beer from sloshing out." He also had a rifle and cold-chisel. The rifle was loaded. There was a

hammer lying on the furnace, but he denied knowing anything about it, though the officers said it had been placed there within a few minutes. He had a gallon jug in his wagon and some tow sacks. There were indications at the place that a still had been in operation there very recently. There was evidence of stealth and secrecy about defendant's movements when he drove up to the place where the beer was and started to remove it. Defendant was convicted, and appealed.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*

*H. F. Seawell for defendant.*

WALKER, J., after stating the case: This indictment was found under Public Laws 1917, chap. 157, which provides that "It shall be unlawful for any person or persons to distill, manufacture, or in any manner make, or for any persons to aid, assist, or abet any such person or persons in distilling, manufacturing or in any manner making any spirituous or malt liquors or intoxicating bitters within the State of North Carolina. . . . Any person or persons violating the provisions of this act shall be guilty of a felony and be imprisoned in the State Prison for not less than one year and not exceeding five years, in the discretion of the court."

The contention of the defendant is that as there was no proof that any liquor was found at the still, or that any was manufactured there, no offense had been committed. It is true that no liquor was found by the officers who made the search, but it does not follow from this fact that none was ever manufactured. There was evidence from which the jury could infer that the still had been operated not long before the officers arrived, and that somebody had evidently made a hasty removal of the still and most of its accessories, as the beer was left there, and some barrel hoops and wood. The State contends that defendant's conduct tended to show that he knew what had been done and that it was unlawful; otherwise, he would not have been so cautious and stealthy in his movements; that he selected what he believed was a fit hour for his work to be done, and traveled along an unfrequented road, whistling, when he approached the place, in a low tone, as a signal to some one of his presence; that he was armed for any eventuality, apparently anticipating trouble, and that he had on his person or in his possession a blanket and oil-cloth, for the purpose of concealing the beer in his wagon, and also had a jug, hammer, cold-chisel, and some sacks. While these facts and circumstances may not necessarily prove that the defendant was engaged at the still, in the manufacture of liquor, as argued by the State, the jury might infer from them that he was so engaged.

We do not agree with the learned counsel that the State was required to show that spirituous liquor was actually produced at the still, and that if the parties who were operating it had been caught in the act of making the liquor, though the process had not reached its final stage, they could not be convicted. They were manufacturing it, even though they had not finished their work and fully produced the intended result, having been unexpectedly foiled in their purpose and forced to retire to a place of safety. They had not finished moving the still and its appurtenances when the officers appeared and arrested the defendant; and while defendant was uncovering the beer, this colloquy took place between the officer (J. W. Brown) and him: The officer said, "What are you doing here?" He replied, "I just came here." When the officer said, "Whose beer is this?" or "Whose still is this?" defendant answered, "I don't know anything about it," and the officer said, "Consider yourself under arrest." The defendant said to the other officer (E. R. Brown) that "it was easy to get into trouble, and stated how much money he was to get," and also said that he had come there to haul the beer away, and brought the jug in which to carry some to his home. There was evidence, we think, from which the jury could make the deduction that liquor had actually been manufactured. We do not mean to imply that it would not be sufficient to convict if the parties were engaged in the manufacture of liquor, or were making it, and left before it was made. *S. v. Summey*, 60 N. C., 496. In this case the court instructed the jury as follows: "If you find that there was no liquor manufactured as contemplated by the statute, you should acquit the defendant, and you need not go any further. But if this evidence convinces you beyond a reasonable doubt that there was an illicit still and that liquor had been manufactured, and that this beer was there for the purpose of furthering this business of making liquor, then the next question for you to consider is this: Was the defendant engaged in the business of manufacturing liquor, if it was being manufactured?" The defendant surely cannot complain of these instructions.

We have pointed out the evidence which tended, as the State argues, to show a guilty knowledge on the part of the defendant of what had been done, and which is some evidence against him, that the other parties had been engaged in an unlawful act; and, further, it may be said that it could not have been unlawful unless it was the manufacture of liquor, as we can conceive of no other crime that had been committed. But while there is evidence, it must not be supposed that it establishes the defendant's guilt, as it only tends to do so, and the jury may well find from it that the defendant is innocent of any wrong-doing, and that he went there, not as a participant in the crime, if one was committed, but merely to haul away the remnants, after the purpose had been accom-

plished or had been completedly frustrated, and with no intention of taking any part in the manufacture of liquor. If that was his purpose, and his acts were done innocently, or, in other words, if he hauled away beer as an act disconnected with the manufacture of liquor, he would not be guilty under this statute. The jury must pass upon this controverted question and say what is the truth of the matter, giving the defendant the full benefit of the presumption of innocence and the doctrine of reasonable doubt.

It makes no difference whether defendant was·a principal in the first degree or in the second degree as an aider and abettor. The latter is but a lower grade of the principal offense, viz., the distilling or manufacturing of the liquor. An aider and abettor is denominated in the books as a principal in the second degree. *S. v. Powell,* 168 N. C., 134; Clark's Cr. Law (2d Ed.), p. 116. This brings the case within the terms of Laws 1891, chap. 205 (Revisal, sec. 3269), which provides: "Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of any attempt to commit a less degree of the same crime."

The judge was not bound to adopt the exact language of counsel in giving a requested instruction, if the latter is substantially given, and not in a way to weaken its force. *S. v. Rowe,* 155 N. C., 436.

If the indictment does not sufficiently inform the defendant of the particular charge made against him, so as to enable him to prepare his defense, he may apply for a bill of particulars, under Revisal, sec. 3244, which provides: "In all indictments when further information not required to be set out therein is desirable for the better defense of the accused, the court, upon motion, may, in its discretion, require the solicitor to furnish a bill of particulars of such matters." *S. v. Brady,* 107 N. C., 822; *S. v. Shade,* 115 N. C., 757; *S. v. Corbin,* 157 N. C., 619.

But we must award a new trial because of substantial error in the charge. After giving·proper instructions to the jury, the court, when the jury returned to the courtroom for further instructions, repeated briefly those given before they retired to their room, and then added: "He said himself that he was there for the purpose of hauling it off to assist somebody who had put that beer there. He stated that himself, and he stated that he got into bad luck, or something like that, for undertaking to do that thing."

The defendant did not testify in his own behalf, and his Honor manifestly was referring here to what the State's witnesses had testified that the defendant told them at the still at the time of his arrest; but whether he had made those statements to the officers was a question of fact for the jury to decide, depending upon the credibility of the State's wit-

nesses, and the court was deciding that he did make the statements when it charged the jury that "he said himself that he was there for the purpose of hauling it off," etc., and this the court could not do, as the jury must pass upon the credibility of the witnesses, and find the facts. *S. v. Davis,* 136 N. C., 568; *S. v. Cook,* 162 N. C., 586. The court, therefore, inadvertently, of course, expressed its opinion upon the weight of the testimony. The credibility of the witnesses always is a question for the jury.

It is said in *S. v. Hill,* 141 N. C., at p. 772: "When a plea of not guilty has been entered and stands on the record undetermined, it puts in issue not only the guilt, but the credibility of the evidence. As is said in *S. v. Riley,* 113 N. C., 648, 'The plea of not guilty disputes the credibility of the evidence, even when uncontradicted, since there is a presumption of innocence which can only be overcome by the verdict of a jury.'" *Harper Mfg. Co. v. R. R. Co.,* 128 N. C., 280; *Cogdell v. R. R. Co.,* 129 N. C., 398; *Smith v. R. R. Co.,* 147 N. C., 603; *Newby v. Edwards,* 153 N. C., 110.

It was assumed in *Gilliland v. Board of Education,* 141 N. C., 482, that a charge that the jury "should consider declarations" of parties, without former proof that they were made, would be error. If there is such preliminary proof as was shown by the charge in that case, when taken as a whole, the case is different.

The plea of not guilty entered by the defendant necessarily denied the truth of all the evidence tending to show guilt, and, therefore, was a sufficient denial that the declarations were ever made. It cannot be doubted that the instruction was prejudicial.

New trial.