### STATE v. PERRY KILLIAN.

(Filed 26 November, 1919.)

**Intoxicating Liquor—Distilling—Evidence—Accessory—Criminal Law.**

    Upon trial for illicit distilling there was evidence tending to show that the defendant, on the occasion of an officer searching for a still, took his gun and fired several times in the air, and when the place was found there was no one there, and the still part had been removed, but the balance of the outfit was there, giving indication of recent use, with fire in the furnace. *Held*, sufficient to convict, the purpose of the defendant thus firing evidently being to abet the distillers and to enable them to escape, thus making him an accessory equally guilty with the principals.

WALKER, J., concurs in result; CLARK, C. J., dissenting; HOKE, J., concurring in the dissenting opinion.

INDICTMENT for illicit manufacture of intoxicating liquor, tried at August Term, 1919, of CALDWELL.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*M. N. Harshaw and W. C. Newland for defendant.*

BROWN, J. The defendant is a merchant at Mortimer, N. C., and in consequence of information received by the sheriff of Caldwell County the sheriff went to Mortimer to capture a blockade distillery that he had learned was in operation near said village. Upon arrival at Mortimer, the sheriff started to find and capture the distillery that had been previously reported to him. When he had gotten some distance from defendant's store he heard a gun fire (though not at him), and he looked in the direction of the sound and saw the defendant unbreeching a shotgun, and then saw him reload the gun and fire again up in the air. This was practically all the evidence against the defendant. The sheriff further swore that he went direct to the still place and found no one there. The still was gone, but there was a fire in the furnace. The defendant was at his store when the sheriff arrived at Mortimer, and that he never saw any one at the still—never saw the defendant closer than one-quarter of a mile to the still. These statements were substan-

48—178

tially corroborated by J. C. Eller, who was the sheriff. The State rested its case and the defendant moved the court to dismiss the action as of nonsuit, which was declined.

We think the motion to dismiss was properly overruled. We think there is some evidence sufficient to go to the jury that the defendant knew of the existence of the still and fired a gun in order to give warning to the distillers. While the evidence is not very strong, we think the jury may infer from all the surroundings as to what was the purpose of the defendant in firing the gun. If his purpose was to aid and abet the distillers and to enable them to escape, the defendant would be an accessory and equally guilty with the principals.

The court instructed the jury as follows: "Gentlemen of the jury: It does not mean that the State is required to satisfy you beyond a reasonable doubt that the defendant was that morning making that particular run, but if he had been manufacturing liquor in the State of North Carolina at any time in the last few years he would be guilty."

The defendant was indicted for manufacture of liquor and operating a still near Mortimer, and the evidence is confined exclusively to the particular occasion described by the witnesses. The only evidence offered by the State was that he fired his gun to give warning on this particular occasion. There is not the slightest evidence tending to show defendant's connection with any other violation of the liquor laws, and we think his Honor was in error in charging the jury as he did.

His Honor further instructed the jury, "That if the State has satisfied you that this man was aiding and abetting, if not himself manufacturing, it would be your duty to convict."

In that charge his Honor evidently was inadvertent to the well-settled rule of the criminal law, that before they can convict of a crime they must be satisfied beyond a reasonable doubt.

New trial.

WALKER, J., concurs in result.

CLARK, C. J., dissenting: Concurs that the motion to dismiss was properly denied. The evidence, as recited by the court in the charge, is as follows: The sheriff, in pursuance of information received, went to Mortimer to look for the still; this defendant was at his store; when the sheriff passed by the rear end of the store and turned the corner of the store he saw a gun' standing there, and when he got to the next 'corner of the store he saw the defendant; he passed on a few steps and looking back saw the defendant go into the house, and returning with the gun, go up in the direction of the still, while the sheriff was going down a further way by the railroad; in a minute or two, or a short time, he heard a gun

fire, and looking back saw the smoke and the defendant unbreaching, or breaching, his gun; the defendant was standing between the rails of the railroad track, and fired his gun again, but he was not shooting at anything; he held the gun up and fired in the air; the sheriff then proceeded to the still, which he found with the fire in the furnace, and everything as if running except that the still had been taken out and was gone. The defendant left his gun in an old house along the road, and that night he was seen to go there with a light and search around in the house and go away.

There was ample evidence justifying the court in submitting the case to the jury. It needs no authority in this State, that one who aids and abets in a misdemeanor can be convicted of the offense charged in the bill. In *S. v. Horner,* 174 N. C., 792, it is said: "It makes no difference whether defendant was a principal in the first degree, or in the second degree, as aider and abettor. The latter is but a lower grade of the principal offense, viz., the distilling and manufacturing of liquor. An aider and abettor is denominated in the books as principal in the second degree."

In *S. v. Ogleston,* 177 N. C., 542, *Allen, J.,* charged the jury: "Under this act, notwithstanding the charge is for the manufacture of spirituous liquors, you can convict either of the defendants for aiding and abetting the manufacturing of spirituous liquors." This charge was sustained by the Court.

It is assigned as error that the judge charged the jury: "Gentlemen of the jury, it does not mean the State is required to satisfy you beyond a reasonable doubt that the defendant was that morning making that particular run; but if he had been manufacturing liquor in the State of North Carolina, at any time in the last two years, he would be guilty."

I cannot concur that "the only evidence offered by the State was that the defendant fired his gun to give warning on this particular occasion." There were many additional circumstances from which the jury could infer that the aiding and abetting had existed prior to this time. The sheriff, when he went up by the rear of the defendant's store, in passing around the corner saw the gun standing there, and the defendant, who was near by, went to the house, got the gun, and went by a short cut in the direction of the still. The sheriff heard the gun fire, saw the smoke from the gun, and defendant unbreaching his gun. He saw him fire the gun again, though he was not shooting at anything; the sheriff then went to the still and found fire still in the furnace, and everything as if running, except that the still itself was taken out and gone. This evidence was sufficient to submit to the jury the question whether the defendant had previous knowledge of the illicit manufacturing of liquor, and was under an agreement to give warning of the approach of officers. If not, why

STATE *v.* KILLIAN.

did he have his gun ready at hand, and why did he go by a short cut near the distillery and give notice by firing his gun off twice, and then hide his gun and go back that night secretly to get it? To any reasonable man there can be but one inference, and that is that there was preconcert between him and the parties actually running the still, for they left the still "with the fire in the furnace, and he found everything as if running, except that the still was taken out and was gone." There was, therefore, ample evidence from which the jury could draw the inference that the defendant, within two years prior to that particular moment, had been engaged, or was aiding or abetting those who were engaged, in running this illicit distillery. This conduct was not that of a man acting on a sudden impulse. The defendant put on no evidence.

This principle that the aider and abettor, like the receiver of stolen goods, is liable as principal, is older than the common law. Those who have read the old Latin reader *Via Latina* will remember this incident copied from an historian, who wrote 2,500 years ago, at a time when those captured in battle were slain, and not made slaves (as was later the case for several centuries). Said the historian: *"Tubicen ab hostibus captus, 'Ne me,' inquit 'interficite; nam inermis sum, neque quidquam habeo praeter hanc tubam.' At hostes, 'Propter hoc ipsum,' inquiunt 'te interimemus, quod, cum ipse pugnandi sis imperitus, alios ad pugnam incitare soles.' Fabula docet non solum maleficos esse puniendos, sed etiam eos qui alios ad male faciendum incitent."* This, briefly rendered into English, is as follows: "A trumpeter captured by the enemy said, 'Do not kill me, for I am unarmed and have nothing except this trumpet.' But the captors replied: 'For that very reason we will slay you, because when the order comes for battle, you only incite others to fight.' This teaches us that not only those who do evil should be punished, but more especially those who encourage others to do evil, should suffer."

It is also assigned as error that the court charged the jury: "If the State has satisfied you that this man was aiding and abetting, if not himself manufacturing, it would be your duty to convict," and erred in leaving out the words "beyond a reasonable doubt." This is not just to the learned judge who no less than *eleven times* in this somewhat brief charge told the jury they must acquit the defendant unless they found him guilty "beyond a reasonable doubt." The charge must be taken as a whole.

In the opening of the charge *Judge Harding* charged: "In this case you can convict the defendant for the manufacture of liquor, or for aiding and assisting in the manufacture of liquor; that is the law in this State. The burden is on the State to satisfy you beyond a reasonable doubt that the defendant is guilty." This was not only said eleven

times in the charge, but the charge objected to above, with its context, reads as follows, and is the conclusion of the charge: "If the State has satisfied you that this man was aiding and assisting; if not himself manufacturing liquor, it would be your duty to convict; if the State has failed to satisfy you, *give him the benefit of the doubt and acquit him.*

"I say, as I have said so many times, a reasonable doubt does not mean any doubt or suspicion, or an indefinite, vague, visionary information you may take of it; a doubt on the part of anybody else; you should refuse to convict; but if you have such a doubt; if the evidence in this case raises in your mind, as would be raised in the mind of a reasonably thinking man when he comes to consider all the evidence in this, all the facts surrounding the situation; if you have a reasonable doubt as to the defendant's guilt, give him the benefit of the doubt and acquit him.

"If the State has satisfied you beyond a reasonable doubt, and your discretion says so, it is your duty to convict him; just as it is your duty to acquit him if the State has failed to so satisfy you. Retire and take your verdict."

Thus the instruction that the jury must acquit the defendant unless they find him guilty beyond a reasonable doubt is not only given eleven times in the charge, but three times in the immediate context following that paragraph and closing the instructions to the jury, and, in addition, as part of *the very same sentence* (which part is omitted by defendant's counsel in assigning error) the court said that the jury must give the defendant "the benefit of the doubt and acquit him."

HOKE, J., concurring in dissent.