PEOPLE *v.* NANNINGA.

1. INTOXICATING LIQUORS—CRIMINAL LAW—ENGAGED IN MANUFAC-
TURING LIQUORS, WHAT CONSTITUTES.
   In a prosecution for a violation of the liquor law (Act No.
   53, Pub. Acts 1919), where defendant concedes that he was
   actually engaged in making whisky at the time of his
   arrest, his contention that he was unlawfully convicted of
   manufacturing whisky because he had not yet produced
   any, cannot be sustained, since to manufacture, within
   the purview of the statute, means not only to produce or
   create, but covers as well the active efforts and means
   employed in making the prohibited liquor.

2. SAME—INFORMATION—SURPLUSAGE.
   Defendant's contention that, because he was charged in the
   information with being "engaged in the business" of manu-
   facturing whisky, while the proofs show but a single act,
   therefore he should not be found guilty, cannot be sus-
   tained, since the words "engaged in the business" are not
   in the statute, are not an essential element of the offense,
   and may be treated as surplusage in the information.

3. APPEAL AND ERROR—CRIMINAL LAW—INFORMATION—DUPLICITY.
   The objection that the information was bad for duplicity,
   not having been raised in the trial court, was waived, and
   cannot now be heard in this court.

Exceptions before judgment from Muskegon; Van-
derwerp (John), J. Submitted January 13, 1921.
(Docket No. 116.) Decided March 30, 1921. Re-
hearing denied July 19, 1921.

William Nanninga was convicted of violating the
liquor law. Affirmed.

*James E. Sullivan,* for appellant.

*Merlin Wiley,* Attorney General, *Harry W. Jackson,*
Prosecuting Attorney, and *R. Glen Dunn,* Assistant
Prosecuting Attorney, for the people.

WIEST, J.   Defendant was convicted of a violation of the liquor law, under an information of one count, charging that:

"He did unlawfully manufacture * *. * and was then and there engaged in the business of manufacturing whisky, and was then and there in possession of certain still, kettles, pails, coils, rye, sugar and a quantity of sour corn mash, all of the same being implements and ingredients used in the manufacture of whisky."

There was found upon the premises of defendant a large copper kettle with an iron band around the top firmly fixed with hooks and bolts, designed to hold the cover in place on the kettle, a cover loosely fitting the top of the kettle with strips of iron crossing the same, with holes and nuts that would fit the bolts so as to secure the cover on the kettle, also a copper coil called a worm, one end of which would fit into a hole in the cover and the other end loose, also a large pail with a hole at the bottom, through which the other end of the coil or worm might pass, and a gasoline stove with the wick lighted and turned low, and on the stove a granite kettle containing three or four gallons of rye and water mixed, and on the floor a large stone jar containing four or five gallons of rye and water mixed. The granite kettle was not over the flame of the stove, but witnesses testified that the water in the kettle was steaming.   In another part of the dwelling was found a bag containing about a bushel of rye and a sack of sugar containing about 50 pounds.   No whisky or any other intoxicating liquor was found.   There was testimony that the apparatus above described constituted a good whisky still.   Defendant was found in possession and testified that he was the owner of all the articles and ingredients; that he had never tried to make any whisky before, but had read how liquor might be made and had mixed the rye and water together about

two hours before the officers came to his house, and had placed the sugar in the kettle on the stove, but there was no fermentation, although he intended to try it out, using the above articles mentioned to see if he could distill liquor.

The assignments of error present the question of whether defendant should have been discharged on the ground that he was not manufacturing intoxicating liquor. It is urged in behalf of defendant that, to manufacture intoxicating liquor, the liquor must have an actual existence and not a mere potential one.

The statute, Act No. 53, Pub. Acts 1919, provides that:

"It shall be unlawful for any person * * * to manufacture * * * intoxicating liquors." * * *

Many definitions of the word "manufacture" are to be found in the books, but most of them are of little help upon the question presented; for we must construe the meaning here having in mind its sense in connection with the prohibition imposed. The purpose of this statute is to prohibit all manufacture of intoxicating liquors, except for the permitted purposes, and it reaches and stops all steps in the actual process of manufacturing up to and including the finished product. That defendant was actually engaged in making whisky is conceded, but it is claimed that, because his efforts to that end were arrested by the arrival of the police, he is not guilty of manufacturing. The construction contended for is too narrow and would lead to the absurdity that the law only prohibits the finished product and not any of the intermediate steps or the energy applied and the means employed toward accomplishing the end in view.

To manufacture, within the purview of this statute, means not only to produce or create, but covers as well the active efforts and the means employed in making

the prohibited liquor. There can be no intoxicating liquor distilled without effort, assisted by means of producing; and one actually engaged in the effort of making such liquor, having assembled and actually using the method and means calculated to that end, falls within the statute making it unlawful to manufacture intoxicating liquor. It would be paradoxical to hold that a man who had read up on how to make whisky and had equipped himself with all the appliances for doing so, and gathered all the necessary ingredients, and was actually making whisky, was not making whisky.

The statute is clear enough and its object and end must not be defeated by a construction under which the finished product only is considered and not the actual manufacture of the prohibited liquor. Under an indictment for maintaining "a distillery where alcoholic liquors are manufactured and distilled," it was held that:

"To constitute the offense of manufacturing liquor it is not necessary that the product of the manufacture should be complete. Manufacture is 'the process of making by art or reducing materials into form fit for use, by the hand or by machinery' (26 Cyc. p. 519); and one employed in this process is manufacturing." *State* v. *Ravan*, 91 S. C. 265 (74 S. E. 500).

In *State* v. *Horner*, 174 N. C. 788 (94 S. E. 291), it was said:

"We do not agree with the learned counsel that the State was required to show that spirituous liquor was actually produced at the still, and that if the parties who were operating it had been caught in the act of making the liquor, though the process had not reached its final stage, they could not be convicted. They were manufacturing it, even though they had not finished their work and fully produced the intended result."

It is also urged that because the information

charges defendant with being engaged in the business of manufacturing whisky, and a single transaction only is shown, having no relation to any previous business of manufacturing, the defendant should not be found guilty of being engaged in the business of manufacturing. The words "engaged in the business" are not to be found in the statute, and therefore are not an essential part of the offense and may be treated as surplusage in the information. It is claimed that the information is bad for duplicity. That question not having been raised in the court below, and opportunity there afforded the prosecution to elect or to amend the information if it charged more than one offense, the defendant has waived his privilege and cannot be heard now to say that he has been harmed. See *People* v. *Peck*, 147 Mich. 84, 88.

We find no reversible error and the conviction is affirmed and the circuit court advised to proceed to judgment.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.