STATE, Respondent, v. LEHNA, Appellant.

(196 N. W. 495.)

(File No. 5465.   Opinion filed December 21, 1923.)

1. **Intoxicating Liquors—Law Against "Manufacture" of Intoxicating Liquor Violated, Although Alcohol Not Drawn from Mash.**

   Conviction of manufacturing intoxicating liquors contrary to Rev. Code 1919, Sec. 10244, was proper on evidence showing the process of manufacturing whisky from mash, and that accused was found in possession of various implements which were useful in the process of manufacturing whisky and of mash containing 9 per cent alcohol, since to "manufacture," within the purview of the statute, refers not only to the fin-

ished product, but covers as well the active efforts and the means employed in making the prohibited liquor.

2. Intoxicating Liquors—Evidence—Evidence Sufficient to Justify Belief that Mash Was for Manufacturing Liquor.

In a prosecution for manufacturing intoxicating liquors where accused was found in possession of various implements which were useful in process of manufacturing whisky and of mash containing 9 per cent alcohol, evidence held sufficient to justify jury in believing that the mash was intended to be made into whisky for beverage purposes.

Appeal from Circuit Court, Clark County; Hon. W. N. Skinner, Judge.

John Lehna was convicted of manufacturing intoxicating liquor, and he appeals from the judgment and from an order denying new trial. Affirmed.

R. A. Dunham, of Clark, and J. M. Henderson, of Chicago, Ill., for Appellant.

Buell F. Jones, Attorney General, and Bernard A. Brown, of Pierre, for Respondent.

GATES, J. Defendant appeals from a judgment of conviction of the manufacture of intoxicating liquor contrary to the provision of section 10244, Rev. Code 1919, and from an order denying new trial.

The evidence on the part of the state tended to show that a deputy state sheriff, in company with two other officers, went to defendant's farm and informed defendant that he had received a good many complaints about people coming out there and securing liquor and asked permission to search the house, which was given; the defendant saying:

"I have never made any liquor on this place; I don't see how people can say such a thing about me."

The search failed to reveal any liquor. The deputy then said to defendant:

"How does it happen that all of these stories are told about you? Have you any enemies around here, or are you keeping it some place else?"

He said:

"I have never made any liquor around here, but there is somebody at Crandall using my name, and many a night when I should have been with my family I have been at Crandall trying

to catch this fellow that is selling liquor and using my name."

The deputy then went to the hoghouse and barn and found a 50 or 52 gallon barrel full of corn mash in process of fermentation, at about the stage when it is drawn off for distillation; a tub of mash containing 6 or 8 gallons; a copper boiler with a cover, a boiler; a large tube; a keg with a small copper coil in it; a gasoline or kerosene stove. The deputy then said to defendant:

"Mr. Lehna, you lied to me, didn't you?" And he said: "Yes, I did; but Mr. Glow, I had to do it. It was the only way I could keep my family from starving. I have no other way." I said: "The mere fact that a man is hard up and in bad circumstances does not give him a right to violate the law." He said: "I could not see my family suffer; but what are you going to do about it? Are you going to arrest me?" And I said, "No, Mr. Lehna, I am not going to arrest you, but I will have to take this evidence to the state's attorney and submit it to him. If the state's attorney figures there is sufficient reason for arresting you, a warrant will be issued and you will be arrested. My work ends when I take the evidence to him." "Well," he said, "what would the fine be?" And I says, "I can't tell you, Mr. Lehna, because I have no right to make any promise." He says: "There is no use of my fighting, but I want to get off as easy as I can. I have got a family. I have got to take care of my family." I said, "Mr. Lehna, if you feel that way about it, throw yourself on the mercy of the court, but do not ever try to lie to the court. Tell him just exactly as it is and the court will treat you right." He said, "I am going to tell you, Mr. Glow, none of this stuff that I made went to Crandall; it went the other way."

The evidence also tended to show the process of manufacture of whisky from the mash, and that the various implements found were useful in such process, and that upon chemical analysis the mash contained 9 per cent of alcohol. It is urged that the evidence was insufficient to sustain the verdict under the information, which charged:

"That at said time and place the said John Lehna, defendant, did then and there willfully and unlawfully make, distill and manufacture for beverage purposes, intoxicating liquor, namely, what is commonly known as 'Moonshine' whisky, also as 'White Mule' whisky."

[1]   It is urged that the statute only refers to the finished product; that a person cannot be convicted of the manufacture of whisky upon proof of his manufacture of mash.

The Supreme Court of Michigan has well disposed of that question under a statute similar to ours in People v. Nanninga, 213 Mich. 354, 181 N. W. 1014, viz:

"The purpose of this statute is to prohibit all manufacture of intoxicating liquors, except for the permitted purposes, and it reaches and stops all steps in the actual process of manufacturing, up to and including the finished product.   That respondent was actually engaged in making whisky is conceded; but it is claimed that, because his efforts to that end were arrested by the arrival of the police, he is not guilty of manufacturing.   The construction contended for is too narrow, and would lead to the absurdity that the law only prohibits the finished product and not any of the intermediate steps or the energy applied and the means employed toward accomplishing the end in view.   To manufacture, within the purview of this statute, means not only to produce or create, but covers as well the active efforts and the means employed in making the prohibited liquor. · There can be no intoxicating liquor distilled, without effort, assisted by means of producing; and one actually engaged in the effort of making such liquor, having assembled and actually using the method and means calculated to that end, falls within the statute making it unlawful to manufacture intoxicating liquor.   It would be paradoxical to hold that a man who had read up on how to make whisky, and had equipped himself with all the appliances for doing so, and gathered all the necessary ingredients, and was actually making whisky, was not making whisky."

· [2]   But it is urged that a conviction under such evidence might be obtained where the intention of the defendant was not to violate the law, but to manufacture mash for some legitimate purpose.   Suffice it to say that the intent of the defendant in such manufacture was a question for the jury.   If from the evidence the jury believed his intent to be lawful, the defendant no doubt would have been acquitted.   We cannot say that the evidence was insufficient to justify the jury in believing that the mash was intended to be made into whisky for beverage purposes.

Finding no error in the record, the judgment and order appealed from are affirmed.

SHERWOOD, J., having been of counsel upon the trial, not sitting.

Note.—Reported in 196 N. W. 495.    See, Headnote (1), American Key-Numbered Digest, Intoxicating liquors, Key-No. 137, 33 C. J. Sec. 195; (2) Intoxicating liquors, Key-No. 236(5), 33 C. J. Sec. 502.