COMMONWEALTH *vs.* CHARLES AMBROZIEVITZ.

Worcester.· September 23, 1929. — October 18, 1929.

Present: CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Intoxicating Liquor. Evidence,* Presumptions and burden of proof. *Words,* "Moonshine mash."

At the trial of a complaint under G. L. c. 138, § 2A, charging the defendant with the manufacture of intoxicating liquors with intent to sell, and with keeping the same with intent to sell without having a license therefor, the defendant rested at the close of the evidence introduced by the Commonwealth, which was that the defendant by agreement made by him with the owner of certain premises was to make "moonshine" on the premises of such owner, and that such owner was to receive $3 per barrel as rent of the premises; that the defendant brought five empty fifty-gallon barrels, some corn, some sugar and an oil stove to the premises, and two or three days later made some "mash" which he placed in the barrels; that he said he would come down the first of the week and "still" it; that the owner of the premises saw him stirring the contents of the barrels; that when officers made a search of the premises they found the five barrels of "moonshine mash," which was bubbling or boiling, and a small still which was not in operation, and an oil stove; that the officers took away some of the mash in a jug, but it exploded on the way. No analysis was made of the contents of the barrels to ascertain the alcoholic content. The judge denied a motion that a verdict be ordered for the defendant, and there was a verdict of guilty. *Held,* that

(1) The defendant was not charged with having manufactured distilled spirits, and there was no evidence that the substance in the barrels had ever been distilled;

(2) The statute was to be strictly construed, and unless it plainly appeared that the substance found in the barrels was intoxicating liquor within the meaning of the statute, no offence thereunder had been committed;

(3) Evidence that the defendant intended eventually to put the mash through a process of distillation was not sufficient to warrant a finding that it was intoxicating liquor;

(4) On the evidence, the "moonshine mash" described in the evidence was not intoxicating liquor within the provisions of said § 2A and could not properly have been found to have been a beverage within the provisions of G. L. c. 138, § 3;

(5) A verdict of not guilty should have been ordered.

COMPLAINT, received and sworn to before a trial justice in and for the county of Worcester on February 2, 1929,

charging a violation of § 2A, added to G. L. c. 138 by St. 1923, c. 370.

On appeal the complaint was tried in the Superior Court before *Hobson,* J., a judge of a district court sitting in the Superior Court. Material evidence is stated in the opinion. The defendant rested at the close of the evidence of the Commonwealth and moved that a verdict of not guilty be ordered. The motion was denied. There was a verdict of guilty. The defendant alleged exceptions.

The case was argued at the bar in September, 1929, before *Crosby, Pierce, Sanderson,* & *Field,* JJ., and afterwards was submitted on briefs to all the Justices except *Rugg,* C.J.

*A. T. Bazydlo,* for the defendant.

*H. W. Brown,* Assistant District Attorney, (*C. B. Rugg,* District Attorney, & *E. G. Norman,* Assistant District Attorney, with him,) for the Commonwealth.

CROSBY, J. The defendant in a complaint brought under § 2A, added to G. L. c. 138 by St. 1923, c. 370, was charged with the manufacture of intoxicating liquors with intent to sell, and with keeping the same with intent to sell without having a license therefor.

There was evidence offered by the Commonwealth from which the jury could have found that the defendant by agreement made by him with one Banowski was to make "moonshine" on the premises of the latter, and that Banowski was to receive $3 per barrel as rent of the premises; that the defendant brought five empty fifty-gallon barrels, some corn, some sugar and an oil stove to the premises, and two or three days later made some "mash" which he placed in the barrels; that he said he would come down the first of the week and "still" it; that Banowski saw him stirring the contents of the barrels; that when officers made a search of the premises they found the five barrels of "moonshine mash," which was bubbling or boiling, and a small still which was not in operation, and an oil stove; that the officers took away some of the mash in a jug but it exploded on the way back. No analysis was made of the contents of the barrels to ascertain the alcoholic content. The foregoing is, in substance, all the material evidence

offered by the Commonwealth.  The defendant offered no evidence and filed a motion for a directed verdict; it was denied subject to the defendant's exception.  The jury returned a verdict of guilty.

The question is whether the evidence warranted a finding that the defendant manufactured intoxicating liquor within the meaning of said § 2A, which reads in part as follows: "No person shall manufacture, transport by air craft, water craft or vehicle, import or export spirituous or intoxicating liquor as defined by section three, . . . unless in each instance he shall have obtained the permit or other authority required therefor by the laws of the United States and the regulations made thereunder."  Spirituous or intoxicating liquor is defined in G. L. c. 138, § 3, as "Any beverage containing more than two and three quarters per cent of alcohol by weight at sixty degrees Fahrenheit, and distilled spirits, shall be deemed to be intoxicating liquor within the meaning of this chapter."

The defendant was not charged with having manufactured distilled spirits, and there was no evidence that the substance in the barrels had ever been distilled.  Distilled spirits or distilled liquor is defined as liquor obtained by distillation from wine or other fermented fruit juice or plant juice, or from starchy materials, such as corn, rye, barley or potatoes which must first be brewed.  Distilled liquor cannot be manufactured until it has passed through the process of distillation.  It was said by Metcalf, J. in *Commonwealth* v. *Grey*, 2 Gray, 501, at page 502, that the words "spirituous" and "intoxicating" were not synonymous. "All spirituous liquor is intoxicating; yet all intoxicating liquor is not spirituous.  In common parlance, spirituous liquor means distilled liquor; and such, we believe, is its meaning in the statute."  *Sarlls* v. *United States*, 152 U. S. 570, and cases cited.  As the defendant was not charged with the manufacture of distilled spirits, and as there was no evidence that the substance found in the barrels had ever been distilled, it is plain that the defendant could not properly be convicted of that offence.

The question remains whether the evidence warranted a

finding that the defendant had manufactured intoxicating liquor. The statute is to be strictly construed, and unless it plainly appears that the substance found in the barrels was intoxicating liquor within the meaning of the statute, no offence thereunder was committed. There is no evidence to show that the so called "moonshine mash" could ever become intoxicating liquor, or could become a beverage unless and until it was subjected to the process of distillation. Evidence that the defendant intended eventually to put the mash through a process of distillation is not sufficient to warrant a finding that it was intoxicating liquor. The evidence showed that the defendant had a still upon the premises, but it was not in operation at the time of the search, nor is there any evidence to show that it ever had been used by the defendant. In *Commonwealth v. Green*, 253 Mass. 458, the process of manufacture was completed by the use of certain ingredients in making beer, and as it was shown that the finished product contained more than two and seventy-five hundredths per cent of alcohol by weight at sixty degrees Fahrenheit, it was held to be intoxicating liquor. In that case it was said, at page 459, that "The crime is committed if spirituous or intoxicating liquor is manufactured, without reference to the intent of the manufacturer or the use to which it is to be put." "The verb 'manufacture' is synonymous with 'make.' To manufacture is to make wares or other products by hand, machinery or other agency. It may also be defined to work, as raw or partly wrought materials into suitable forms for use."

We are of opinion that it was not the intention of the Legislature in the enactment of the statute to make the substance found on the premises occupied by the defendant intoxicating liquor. See *Graff* v. *Minnesota Flint Rock Co.* 147 Minn. 58. There is no evidence which would warrant a finding that it was a beverage within the meaning of G. L. c. 138, § 3. It was said in *Jones* v. *Selectmen of Weston*, 238 Mass. 218, at page 220, that "The main purpose of c. 138, like that of its statutory predecessor, R. L.

c. 100, is the prohibition of the sale of intoxicating liquors as a beverage." The same reasoning is applicable to a manufacture as to a sale. There was no evidence to warrant a finding that the substance known as "mash" contained more than two and three quarters per cent of alcohol by weight at sixty degrees Fahrenheit as defined by G. L. c. 138, § 3, nor evidence that the substance contained any percentage of alcohol; it therefore could not be found to be intoxicating liquor within the meaning of the statute. The court cannot take judicial notice that "moonshine mash" is a beverage or that it has any alcoholic content. *Commonwealth* v. *Sookey,* 236 Mass. 448.

If the substance made by the defendant might by distillation or other process eventually be manufactured into intoxicating liquor, such substance in the absence of any other act of the defendant cannot be held to be intoxicating liquor within the meaning of the statute. There is no evidence that the mash could ever become distilled spirits or intoxicating liquor if it remained in the stage in which it was left by the defendant, and without being distilled or subject to some other process. So far as *People* v. *Nanninga,* 213 Mich. 354, and other cases cited by the Commonwealth are contrary to the result reached in the case at bar, we cannot follow them.

In the opinion of a majority of the court there was no evidence to warrant a finding that the defendant in violation of the statute manufactured spirituous or intoxicating liquors, and his request that a verdict of not guilty be ordered should have been granted.

*Exceptions  sustained.*