8176

STATE v. RAVAN.

LIQUORS.—UNDER AN INDICTMENT charging a defendant with keeping and maintaining a distillery, a place where alcoholic liquors were manufactured, the defendant may be convicted on proof that he is found at a still in the act of taking out the water, cleaning out the still and with a bundle of kindling under his arm, and the presence of a lot of beer for manufacture.

MESSRS. JUSTICES HYDRICK *and* FRASER *dissent.*

Before WATTS, J., Spartanburg, 1911.    Affirmed.

Indictment by the State against Will Ravan.    Defendant appeals.

*Messrs. Carson & Boyd,* for appellant.    Oral argument.

*Solicitor J. C. Otts,* contra, cites: *Manufacture means change in form by hand or machinery:* 26 Cyc. 519; 20 L. R. A. 241; 110 Tenn. 183.

April 9, 1912.    The opinion of the Court was delivered by

MR. JUSTICE WOODS. The question in this case is whether the Circuit Judge was in error in refusing to direct a verdict of acquittal on the trial of the defendant for violation of the dispensary law. Section 1 of the act of 1909 (26 Stat. 60) provides: "That it shall be unlawful for any person, firm, corporation or association in this State to manufacture, sell, barter, exchange, receive, accept, give away to induce trade, deliver, store, keep in possession in this State, furnish at public places or otherwise dispose of any spirituous, malt, vinous, fermented, brewed or other liquors or beverages, or any compound or mixture thereof which contains alcohol and is used as a beverage, and which if drunk to excess will produce intoxication, except as hereinafter provided."

The indictment charged that the defendant, Will Ravan, "did wilfully and unlawfully keep and maintain a place at his place, and near his home, a distillery where alcoholic liquors are manufactured, made and distilled, sold, bartered and given away, and where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage, and where alcoholic liquors were kept for sale, barter and delivery, thereby, then and there keeping and maintaining a common nuisance * * *." We think it is too fine a verbal distinction to say that the charge of keeping a distillery where liquors are manufactured and kept did not plainly indicate to the defendant that he was charged with manufacturing and keeping in his possession alcoholic liquors.

There was direct evidence that the defendant was actually occupied at the time he was arrested in the manufacture of liquor. One of the constables testified: "We went to the distillery about six o'clock in the morning; no one was there; the still was in the furnace; and we hid ourselves in the bushes around there in sight of the distillery, and at 8:30 Mr. Ravan came with a ———— under one arm and kindling under the other. The still was full of water, and

he let the water out of the still and picked up a piece of copper about the size of that (indicating) and was scraping in the still, and we rushed in on him. There was another man with us—Mr. Meret; he was the man that caught him; but we were all right there. What kind of a still was that? Copper still, about 60-gallon. What other elements were there used to make liquor? We found seven fermenters, and I reckon fully 700 or 800 gallons of beer. What is that beer? That is still beer, what they make whiskey out of."

To constitute the offense of manufacturing liquor it is not necessary that the product of the manufacture should be complete. Manufacture is "the process of making by art or reducing materials into form fit for use, by the hand or by machinery" (26 Cyc. 519) ; and one employed in this process is manufacturing.

But, aside from that, the possession of the still, having in it the water indicative of use for distilling, and the emptying out of the water in order to replace it with fresh water, was circumstantial evidence which, unexplained, tended to prove that the defendant had but recently used the still in the manufacture of liquor.

Judgment affirmed.

MR. CHIEF JUSTICE GARY *concurs.*

MR. JUSTICE HYDRICK, *dissenting.* The defendant was convicted upon an indictment which charged that he "did wilfully and unlawfully keep and maintain a place at his place, and near his home, a distillery where alcoholic liquors are manufactured, made and distilled, sold, bartered and given away, and where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage, and where alcoholic liquors were kept for sale, barter and delivery, thereby, then and there keeping and maintaining a common nuisance against the form of the statute in such

case made and provided, and against the peace and dignity of the State."

The testimony on the part of the State tended to prove no more than that Ravan was caught at a distillery, where there were some fermenters and 700 or 800 gallons of beer; that he came to the distillery early in the morning, with some kindling under his arm, as if to kindle a fire under the still; that he let the water out of the still and began to scrape it out with a piece of copper, when the officers ran in and captured him.

Defendant moved the Court to direct a verdict of not guilty, because no crime had been proved against him. The motion was refused, and the Court charged the jury that, if the testimony satisfied them beyond a reasonable doubt that defendant had a distillery where alcoholic liquors were manufactured, they should convict him; that the whole question for them to determine, and upon it depended the guilt or innocence of defendant, was whether he was engaged in the manufacture of alcoholic liquors; that it was not necessary that the process should be completed, but that if he had engaged in the process, and it had been only partially completed, the offense was committed.

The verdict should have been directed as requested. No crime was proved. In fact, no crime was charged. There can be no other construction put upon this indictment and upon this evidence unless the Court departs from the universally accepted time-honored rules for construing indictments and criminal statutes. It will be observed that the indictment does not charge the defendant himself with manufacturing alcoholic liquors; but merely with keeping and maintaining a place,—a distillery, where alcoholic liquors are manufactured, made and distilled, etc., etc., "thereby, then and there keeping and maintaining a common nuisance." There is no proof that he owned, or kept the distillery, or that it was on his premises. It will be observed also that the statute, which is set out below, does not make

the keeping of a place where liquors are manufactured a nuisance. Hence, the indictment charges no crime. The only section of the Criminal Code under which the indictment could be laid is section 785, which reads: "All alcoholic liquors and beverages, whether manufactured within this State or elsewhere, or any mixture by whatsoever name called, which, if drunk to excess will produce intoxication, are hereby declared to be detrimental, and their use and consumption to be against the morals, good health and safety of the State, and contraband. That it shall be unlawful for any person, firm, corporation or association within this State to manufacture, sell, barter, exchange, receive, accept, give away to induce trade, deliver, store, keep in possession in this State, furnish at public places, or otherwise dispose of any spirituous, malt, vinous, fermented, brewed or other liquors and beverages, or any compound or mixture thereof, which contains alcohol and is used as a beverage, and which, if drunk to excess will produce intoxication, except as hereinafter provided." There was not a *scintilla* of evidence that a drop of liquor had ever been manufactured or distilled at the place in question. In misdemeanors, where an attempt is not an indictable offense, the law recognizes the existence of the point of repentance; and hence, unless the statute expressly makes the attempt or the engaging in the process of manufacturing liquors a crime, one is not guilty of violating the law, until the manufacture is completed, because he could repent at any moment, short of completing the process, stop and save himself from the penalty of the law. Moreover, under section 785, it was necessary to allege and prove that defendant manufactured liquors which contained alcohol, and which are used as a beverage, and which, if drunk to excess will produce intoxication. There is no such allegation, nor is there a tittle of proof tending to show what kind, if any, liquor had ever been made, or indeed that any had been made, or that if drunk to excess it would produce intoxication. If all

that is to be assumed, and, from the moral aspect of the case, perhaps it may be, what of the legal aspect, and what becomes of the presumption of innocence with which the law clothes every citizen who is charged with·crime, and which it has said must remain around him, until· it is removed by proof of his guilt, beyond a reasonable doubt?

MR. JUSTICE FRASER. *I concur in the result with Mr. Justice Hydrick.* I think the jury· were fully warranted in finding from the evidence that some one kept at the still "a place where liquors were manufactured," but there was no evidence that the defendant did. The keeping of such a place is not forbidden in the statute. The statute makes the doing of certain things a crime. It also makes the "keeping of a place" where certain things are done a crime. The statute makes a distinction between the two, and it seems to me the Court ought to observe it, especially in criminal cases.

MR. JUSTICE WATTS *disqualified.*