HOLFORD *v.* STATE.

Opinion delivered May 9, 1927.

1. INTOXICATING LIQUORS—BURDEN OF PROOF.—On an indictment for manufacturing a still in violation of Acts 1921, p. 372, § 4, the burden is on the State to prove beyond a reasonable doubt that accused manufactured a complete still.

2. INTOXICATING LIQUORS—WEIGHT AND SUFFICIENCY OF EVIDENCE.— Evidence that defendants were making a copper vessel in a secluded place, and that one defendant, when arrested, said it was his "first time," and afterward said he would like to get out easily, *held* insufficient, as mere suspicious circumstances, to raise a question for the jury in a prosecution for manufacturing a still in violation of Acts 1921, p. 372, § 4.

3. INTOXICATING LIQUORS — ATTEMPT TO MANUFACTURE STILL. — A mere attempt or intention to manufacture a still is not a violation of Acts 1921, p. 372, § 4, providing that no person shall manufacture a still without license.

4. INTOXICATING LIQUORS—UNCOMPLETED VESSEL NOT A STILL.—An uncompleted copper vessel which could not be used as a still for separating the alcoholic spirits from fermented substance without additional appliances such as a blanket or cover and worm is not a still, within Acts 1921, p. 372, § 4, prohibiting the unlicensed manufacture of stills.

5. INTOXICATING LIQUORS—MANUFACTURE OF STILL DEFINED.—Acts 1921, p. 372, § 4, prohibiting the unlicensed manufacture of a still refers to the finished product which can be used in the production of alcoholic spirits.

6. STATUTES—CONSTRUCTION OF CRIMINAL STATUTES.—The courts should construe criminal statutes strictly, and not so as to create offenses under statute which are not in express terms created by the Legislature.

7. INTOXICATING LIQUORS—MANUFACTURE OF STILL.—Merely engaging in the process of manufacturing a still is not a crime within Acts 1921, p. 372, prohibiting the manufacture of a still without license, as the law is not violated until the still is completed.

Appeal from Sebastian Circuit Court, Greenwood District; *Cecil Warner*, Special Judge; reversed.

*Holland & Holland,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

WOOD, J. W. A. Holford and Eris Pitchford were jointly indicted in the Sebastian Circuit Court for the

crime of manufacturing a still. Will White testified that he was marshal of the. city of Hartford. He arrested the defendants in July or August, 1925. He found them about 3½ miles west of Hartford, in a woodland about three or four hundred yards west of Pitchford's house. They were behind a thicket from where he approached them. Witness could not see them until he got to them. They could not have been seen from the public road. Witness and the two parties who were with him arrested Holford and Pitchford. They were standing there around a good sized wood fire. They had soldering irons in the fire and the solder was lying by it. There was a hammer on the ground with the rest of the utensils. Before witness and his assistant officer came up they heard rattling like laying tin on the floor. The defendants had a fruit jar there with a little whiskey in it, and a bottle of acid and a smoothing iron. Witness identified the articles that were found. There was a large can made of copper and there were also pieces of copper. When Holford and Pitchford were arrested we searched them, and Holford said he didn't have any gun. Witness looked around to see if they could find anything else that might be connected with a still, but could not find anything. The whiskey in the jar was corn whiskey. There was not over a quarter or half inch in the bottom of the jar. They arrested them for making a still. The still consisted of a copper tank, which was exhibited to the jury. In the making or manufacture of whiskey it is necessary to have some kind of container in which the mash or fermented liquor is put, then the heat is applied so that the vapor will rise and pass into a pipe or worm for condensation. The next step is to put the fire under it, and some arrangement has to be made whereby the vapor could be retained. It has to be inclosed. There must be a worm or some kind of contrivance or pipe whereby the steam that is retained in the vessel can be drawn off and cooled, through water or otherwise. The vapor could not be confined to the can exhibited, because it was open. There was no opening whereby a stillworm or pipe or substitute for a worm

could be connected so the vapors could be drawn off. The witness then describes minutely the can and appliances which were found. There were two sheets of copper at the place—one large sheet and one small—that appeared to be scraps from which the vessel was made. The other articles were tools and material used· in the making of the vessel. It was agreed that neither of the defendants had made application and paid for license as a maker of stills.

Harlan Read, who assisted the marshal in making the arrest, testified, substantially corroborating the testimony of the marshal, except he testified that the character of the woods on the other side of the thicket was open. Witness thought that the parties could have been seen from the road on that side, which was about 350 yards distant, and it was also about the same distance from Pitchford's house. The parties were all standing together. Pitchford said that it was his first time to be caught, and then later on said he would like to get out of it as easy as he could. He was talking to Mr. Meyers. The defendants were told, when arrested, that they were being arrested for making the articles which the officers called a still. Witness was not sure whether he said he had never sold any whiskey. Witness was asked the following questions:

· "Q. Didn't he say that that was the first time he ever was arrested; that that was his first time to be arrested? A. He said that was his first time—I don't know whether it was his first time of being arrested. Q. I will ask you if he did not say that that was the first time that he was ever arrested? A. First time he was caught. Q. Did he say caught? Do you remember that he said it was the first time he was caught? A. He said, 'This is my first time;' he never said whether arrested or caught either one. Q. Then you did not intend to say a moment ago that he said it was his first time to be caught? A. I will not be positive. Q. You are not sure whether he said the first time to be arrested or to be caught? Any

way he did say first time? A. He said it was his first time.''

Witness further stated that he never saw a still in operation, and did not know enough about it to qualify as to what makes a still. He would not undertake to state that the vessel exhibited was a completed still. Witness called it a still.

The deputy sheriff, Stewart, testified that he had been in possession of the articles captured by Reid and White. He gave the dimensions of the can as follows: 21½ inches on the inside across the flat side, from the flat side to the other side 17½ inches, and 17¼ inches across the bottom. The dimensions from top to bottom are practically the same. Witness had captured a number of stills. In a completed still there is a boiler or receptacle for boiling the mixture to create vapor and the withdrawing of the vapor in pipes or coils so as to liquefy it. The copper container or kettle is not capable of being used for the purpose of boiling the mixture to create vapors as it stands; the remaining portion of the kettle could be constructed from the copper sheets that were found by the can. It would have to have a top on it to confine the steam or vapor, and in that top there would have to be a device with an opening suitable to make connection with a pipe or worm, before it could be used as a still. If the large piece of copper, about 2½ feet, should be placed on top of the vessel and made a part of it, there would still be lacking the proper contrivance on the top to make a still. It would require some additional equipment on the top or at either end, or side—an opening cut for a pipe connection. There was nothing of that kind delivered to the witness with the articles captured. With the material at hand there was nothing to prevent anybody from putting a top on the vessel like the bottom.

Alfred Stewart was recalled as a witness, and was allowed to testify, over the objection of the appellant, that the vessel introduced in evidence could not be used as a still without something being placed over the top of

it. They could take a heavy woolen blanket or something of the kind that would absorb the moisture and put it over the vessel and wring it out. It has been done that way. The vessel could have been converted into a still in that way. Any vessel that could be used in that way to boil the mash would make a still. Witness would not designate such a vessel as a still, but it could be used for that purpose. The vessel in controversy witness would not call a still, but, by putting a blanket over it, it could be made a still.

The sheriff of the county testified, over the objection of the appellant, that it was possible to use the vessel exhibited as a still by covering it with a blanket or something that would hold the vapor which comes from the mash and then wring out the blanket or covering. Alcoholic liquor could be produced in that way, the same as if it went through a pipe. It is possible to make whiskey in a vessel of that nature. Witness did not know about a small vessel like a water bucket, but it would be possible with a container of the size of the one exhibited, if covered with a blanket or other covering in the manner stated.

George McLaughlin testified, on behalf of the defendants, that he knew the defendants; that he saw Pitchford some time in July or August, 1925, with reference to making some syrup for witness from sorghum came. Pitchford told witness that he would be ready to make the syrup in three or four days; that he had to make a cooler to his pan someway. Pitchford was a good syrup maker. He was a farmer, and also engaged in raising cane and making molasses for himself and others. In making sorghum the defendant used a copper vessel somewhat similar to the vessel in evidence. The can was used to cool the syrup. Witness described the manner in which the can was used for cooling syrup. Witness was in no way related to the defendant.

Two other witnesses testified to the effect that Pitchford was a farmer and had a sorghum mill. He used a copper vessel for the purpose of cooling the sorghum.

This was customary. The vessel was about 18 inches or 2 feet long and about 16 inches deep and ten inches wide—something like that.

The defendant himself testified that he was a farmer, and also made syrup for himself and people in the community. He had been engaged in that business ever since he reached his majority, and his father had been engaged in the same business before him. That was his business in 1925. Witness was under contract to make syrup for McLaughlin, and, when McLaughlin came to see witness about it, witness was not prepared to make the syrup on that day, because he did not have a cooler, and witness, at the time he was arrested, was manufacturing the can which was introduced in evidence to be used as a cooler for making syrup. Witness employed Holford to assist him. They started to make the vessel in front of witness' gate, but witness' little boy came out where they were and picked up the bottle of acid. Witness then told Holford they would go down in the pasture to finish making the vessel. This they did, and that is where the officers arrested them. Witness had never seen a still made and witness had never heard of the possibility of making a still in the manner described by some of the witnesses. Witness did not know, at the time he was making this vessel, that it was possible to convert the same into a still by putting a blanket over same, etc., as described by some of the witnesses. Witness told the officers, at the time he was arrested, that he had never made any whiskey, had never sold any whiskey, and that was the first time he was ever arrested. These statements were true. Witness wanted to make a can that would hold about a day's run of syrup—45 or 50 gallons—and witness was told by the man from whom he bought the copper that it would make a can of about that capacity. Witness had not finished the can when the officers arrested him. He intended to put an end on the can. The large piece of copper that was found with the can had been cut and fitted on the end just like the other end. Witness then described the manner in which the can was to be used as

a cooler, exhibiting the same to the jury. Witness further explained what he said to the officers when he was arrested by saying, "The officers called it a still." Witness said, "Well, that is the first time I was ever accused of anything like that. I never sold any whiskey and never made any, and never was arrested before in my life." Witness told Mr. Reid, one of the officers, that he would like to know how to get out of it, because they had arrested him and had accused him of having a still. Witness told him he wanted to get out of it, because he had never been accused of anything of the kind before. Witness further explained in detail that his purpose in making the vessel was to use the same as a cooler in the manufacture of syrup.

Holford, the other defendant, testified that he was doing the soldering in making the can for Mr. Pitchford. He did not know that they were making a still. Pitchford stated that he was making a cooler for his sorghum mill. On cross-examination witness stated that he had been convicted of a felony about eighteen months before in Oklahoma. The crime was for selling whiskey, and the penalty was sixty days in jail and $100 fine.

At the conclusion of the testimony counsel for the defendants prayed the court to instruct the jury to return a verdict of not guilty. The court refused the prayer, to which ruling the defendants duly excepted. The court instructed the jury, over the objection of the defendants, that, if the defendants, within three years next before the indictment was returned, in Sebastian County, Arkansas, unlawfully and feloniously manufactured a still which may be used for the purpose of producing alcoholic and intoxicating liquors, and which was manufactured for that purpose, without first having qualified under the laws of the United States as a manufacturer of stills and without paying the tax as required by the laws of the United States on stills, they should find the defendants guilty, otherwise they should acquit them.

The court gave the usual instructions on reasonable doubt, presumption of innocence, and the credibility of witnesses. The defendants presented several prayers for instructions, which, in varying form, in effect requested the court to define a still, and to tell the jury that the vessel in controversy could not be used as a still, and, if the jury found that the defendants manufactured the tank in question, but did not manufacture any other device or apparatus whereby the tank could be converted into a still, the jury should find the defendants not guilty.

The defendants further asked the court to instruct the jury in effect that, if the vessel in controversy could not, without use of some other appliance, be used for the production of distilled spirits, they should find defendants not guilty. The defendants further prayed the court to instruct the jury that the vessel in controversy was not a still; and further, to instruct the jury that, even if they found that the defendants manufactured the tank in controversy intending the same to be used for the production of alcoholic spirits, yet, if the same was not so completed as to make it a still, they should find the defendants not guilty.

At the request of the defendants the court instructed the jury that they had a right to make the metal tank in controversy if the same was not, in fact, a still for the manufacture of alcoholic spirits.

The defendants duly excepted to the rulings of the court in refusing their prayers for instructions, and also to the rulings of the court in giving instructions on its own motion. The jury returned a verdict finding defendants guilty, and fixing their punishment at one year's imprisonment in the State Penitentiary. From the judgment sentencing the defendants in accordance with the verdict is this appeal.

1. The statute under which the appellants were indicted provides as follows:

"No person shall manufacture a stillworm or still without first having qualified under the laws of the United

States as a manufacturer of stills, without paying the tax required by the laws of the United States on the stills and worms manufactured. Any person who converts a kettle, washpot, metal can, tank, barrel, or other vessel into a still or who converts any metal pipe of any kind into a stillworm or a condenser for a still, shall be deemed to be a manufacturer of stills.'' Section 4, act 324 of the Acts of 1921, approved March 23, 1921.

Before the appellants could be convicted under the above statute it devolved upon the State to prove beyond a reasonable doubt that they had manufactured a still. There is no testimony tending to prove that the appellants had manufactured a still. On the contrary, the undisputed testimony proves that the appellants had not manufactured a still. The only circumstances upon which the State relies to sustain the verdict are that Pitchford, one of the appellants, said, when he was arrested, that it was his first time to be caught; that, later on, he stated that he would like to get out as easy as he could; and the further circumstance that the vessel was being manufactured in the woods three or four hundred yards from Pitchford's house, in a secluded spot. But the officer who testified on his examination in chief that Pitchford said it was his ''first time to be caught'' and then later said that he ''would like to get out of it as easy as he could,'' on cross-examination stated that Pitchford said, ''This is my first time; he never said whether arrested or caught, either one.'' The officer was asked this question: ''You are not sure whether he said the first time to be arrested or to be caught?'' and answered, ''He said it was his first time.'' The officer further stated, in answer to the question, ''Didn't Pitchford say he never made any whiskey and never sold any?'' ''He said he never made any, and wanted to get out of it as easy as he could.''

The defendant, Pitchford, himself testified that he told the officer, at the time of his arrest, that he had never made any whiskey, had never sold any whiskey, and that was the first time he was ever arrested. He

further stated that he told the officers that he wanted to get out of it because he had never been into anything of that kind before. As to the place where the vessel was being manufactured, one of the witnesses for the State testified that it was in the open woods, beyond the thicket, and that, in his opinion, it could be seen from the road. The other witness for the State testified that it was in the open woods behind a dense thicket, and could not be seen from the road. In explanation of this circumstance the defendant, Pitchford, testified that they first began the manufacture of the vessel in front of his gate, and his little three-year-old boy came out and picked up the bottle of acid, and they then concluded to move the place of manufacture of the tank into the pasture and to finish the making of the vessel at the place where they were later arrested.

The appellant, Holford, testified that he was employed by Pitchford, and that Pitchford told him he was making a cooler for a sorghum mill. On cross-examination he stated that he had been convicted of selling whiskey in Oklahoma eighteen months before.

If it could be said that these circumstances were of an incriminating character at all, their utmost effect would be to create a bare suspicion that the appellants may have been engaged in the process of manufacturing a still at the time they were arrested, and that is not sufficient to justify the jury in returning a verdict of guilty against them. In *Reed* v. *State,* 97 Ark. 156, 133 S. W. 604, we held that "mere circumstances of suspicion are not sufficient to support a conviction of crime, which must be established by substantial evidence to the exclusion of a reasonable doubt." *France* v. *State,* 68 Ark. 529-532, 60 S. W. 236; *Cook* v. *State, ante* p. 711, and other cases there cited; Underhill's Criminal Evidence, 3 Ed., § 18, and numerous authorities there cited. The testimony of the appellant, Pitchford, was to the effect that he was manufacturing the vessel in controversy for the purpose of using the same as a cooler in connection with his business as a manufacturer of syrup from

sorghum cane. His testimony tended to prove that it was a necessary vessel, and was being properly constructed for that purpose, and the undisputed testimony for the State by all the witnesses was to the effect that, as far as constructed, the vessel could not be used as a still without further and additional appliances. In the absence of some incriminating. testimony tending to show that the vessel was being manufactured by the appellants to be used as a still, we are convinced that the testimony is not sufficient to sustain the verdict, even if it could be said that appellant would be guilty if the vessel when completed could be used as a still.

2. But it will be observed that the statute does not make the attempt to manufacture a still, or the intention to manufacture a still, or the engaging in the process of manufacturing a still, a criminal offense. The statute, in plain terms, reads, "No person shall manufacture a still," and it must be such a vessel as would subject the party manufacturing the same to the payment of the tax required by the laws of the United States on stills. The statute defines a distillery as "any device or any process which separates alcoholic spirits from any fermented substance." The undisputed testimony in the record shows that the vessel under consideration here was not susceptible of being used as a still or distillery; it was unfinished, whether intended for a still or a cooler for syrup. It was not fit for either in its unfinished state, and could not be used as a still without additional appliances. Unquestionably the vessel, in the condition as found by the officers, was not such as to subject the manufacturer to the tax imposed by the United States laws on the manufacture of stills.

In *Hodgkiss* v. *State,* 156 Ark. 340, 246 S. W. 506, we said:

"The word 'still' is sometimes applied to the whole apparatus for evaporation and condensation, but in the description of the parts of the apparatus it is applied merely to the vessel or retort used for boiling and evaporation of the liquid." In that case we further said:

"Any kind of metal vessel can be improvised as a retort for use in boiling liquid for evaporation, but it was not intended to constitute an offense in having possession of such a vessel."

Likewise, by analogy, it should be said here that it was not intended to constitute an offense to be engaged in the manufacture of a vessel which could, with additional appliances, be used as· a still, but which was intended for and, more appropriately, could be used as a receptacle or cooler for syrup. In *Moore* v. *State,* 154 Ark. 13, 240 S. W. 1083, we said:

"We think the Legislature used the word 'still' in its broad sense, and intended to include any device commonly used for separating alcoholic spirits from fermented substances, whether connected up or not, if the various parts had been assembled for the production of alcoholic spirits. Of course, the act was not intended to reach and punish individuals who had in their possession articles which might be converted into a still, unless the articles had been assembled for the purpose of separating alcoholic spirits from fermented substances."

Likewise, by analogy, it should be said here that the law levels its inhibition and punishment against those who manufacture stills, that is, the finished product which can be used in the production of alcoholic spirits. The Legislature has not seen fit to make it a crime to attempt, or to begin, the manufacture of a vessel which, if completed, might be converted into a still or be used as a still.

There is no better settled rule in criminal jurisprudence than that criminal statutes must be strictly construed and pursued. The courts cannot, and should not, by construction or intendment, create offenses under statutes which are not in express terms created by the Legislature. The courts cannot do so without trenching upon the exclusive functions of the Legislature. It occurs to us that a consideration of the entire act of which § 4 above quoted is a part, and the context of that particular section as well, under which the appellants were

indicted for the manufacture of a still, proves conclusively that it was not the intention of the Legislature to make it a crime to be engaged merely in the process of manufacturing a still.   The second section of the statute, it will be observed, makes it a crime to keep in possession a still without registering the same with the proper United States officer, and a crime to set up a still.   Likewise, the third section makes it a crime to set up and use a distillery for the manufacture of intoxicating spirits.   Then comes the language of the fourth section, under which the appellants were indicted for *manufacturing a still.*

Now, it is certain that, under § § 2 and 3, no person could be convicted of keeping in his possession or setting up a part or parts of a still, but which could not be used as a still in the manufacture of liquors.   A part or parts of a still which could not be used in the manufacture of distilled spirits would not be subject to registration or taxation under the United States laws.   Nor would the person manufacturing a part or parts of an incompleted still be required to pay a license as a manufacturer of stills. ·  The inhibition of the statute is against the manufacture, keeping, and setting up of stills—not against the manufacture, keeping or setting up of a part or parts of a still, but which are not, and never could be, a still. The Attorney General relies upon the cases of *Williams* v. *State,* 159 Ark. 170, 251 S. W. 370; *Peoples* v. *Nanninga,* 181 N. W. 1014, 213 Mich. 354; *Shoemake* v. *State,* 86 So. 151, 17 Ala. App. 461; *State* v. *Blackwell,* 105 S. E. 178, 180 N. C. 733; *State* v. *Pollard,* 113 S. E. 69, 120 N. C. 195; and *State* v. *Raven,* 74 S. E. 500, 91 S. C. 265, to support his contention that, if the appellants were engaged in the process of manufacturing a still, although they had not completed its manufacture, they would be guilty under the statute.

In the case of *Williams* v. *State,* Williams was convicted of the crime of making whiskey.   In that case we said:

"If, upon all the facts and circumstances in the case, the jury might have indulged a reasonable inference that the appellant had manufactured whiskey in said county, within three years next before the finding of the indictments, then the evidence was sufficient to support the verdicts."

And we held that the evidence showing that the defendants, when arrested, were preparing to make whiskey, their ownership of a still which had been in use many years for the purpose of making whiskey, together with their confession that they were making the whiskey to sell to get out of debt, and that they had not been making whiskey very long, was sufficient to sustain the charge of *making whiskey.*

It would unduly extend this opinion to review the cases from other jurisdictions cited and relied on by the Attorney General. We have examined them, and, when considered in connection with the statutes and the facts upon which each of the particular cases were bottomed, we believe they are differentiated from the case at bar. In one of the cases, *State* v. *Raven,* 74 S. E. 500, 91 S. C. 265, the charge was keeping a distillery where liquors were manufactured, and Judge Wood, speaking for the majority of the court, said:

"To constitute the offense of manufacturing liquor it is not necessary that the product of the manufacturer should be complete. Manufacture is the 'process of making by art or reducing materials into form fit for use, by the hand or by machinery,' and one employed in this process is manufacturing."

That doctrine we deem unsound when applied to our statute and the facts of this record. Two of the judges dissenting in that case, among other things, said:

"In misdemeanors, where an attempt is not an indictable offense, the law recognizes the existence of the point of repentance; and hence, unless the statute expressly makes the attempt or the engaging in the process of manufacturing liquors a crime, one is not guilty of violating the law until the manufacture is completed,

because he could repent at any moment, short of completing the process, stop, and save himself from the penalty of the law.''

The views of the dissenting judges we believe to be more in accord with the well-established rules of criminal jurisprudence and are consonant with our own views of the law as applicable to our statute and the facts of this record.

Under the charge in this indictment the burden was on the State to prove that the appellants had manufactured a still. There is not a scintilla of evidence that the appellants had manufactured a still, nor is the testimony sufficient, as we view it, even to justify the inference that appellants were engaged in the process of manufacturing a still. Appellants were protected by the presumption of innocence which shielded them from conviction on circumstances of mere suspicion. This presumption of innocence entitled the appellants to an acquittal unless the State, by direct or circumstantial evidence, or by both, proved facts sufficient to justify the jury in concluding that the presumption of innocence had been overcome and that the appellants were guilty beyond a reasonable doubt.

We are convinced that the testimony is not sufficient to sustain the verdict, and that the court erred in not so holding and in not granting appellants' prayer directing the jury to return a verdict of not guilty.

The judgments are therefore reversed, and, inasmuch as the causes have been fully developed, the prosecutions should be dismissed. It is so ordered.