SLIP OPINION



Cite as 2014 Ark. 515

# SUPREME COURT OF ARKANSAS
### No. CR–13–15

|  |  |
|---|---|
| TRACY M. STANDRIDGE<br><br>APPELLANT<br><br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** December 11, 2014<br><br>APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. CR–2010-218]<br><br>HONORABLE ROBERT W. McCORKINDALE, II, JUDGE<br><br><u>REVERSED AND DISMISSED</u>. |

**JOSEPHINE LINKER HART, Associate Justice**

In 2011, a Baxter County jury convicted Tracy Standridge of Class D felony violating an order of protection, and the circuit court sentenced him to fifty-four months in prison. At the same hearing, his probation for a prior offense of violation of a protection order was revoked. Separate appeals were taken from the revocation order and the conviction. The appeal from the revocation order was lodged in the Arkansas Court of Appeals, which affirmed the probation revocation. *Standridge v. State*, 2012 Ark. App. 563, 423 S.W.3d 677. The court of appeals dismissed Standridge's appeal from the conviction. *Standridge v. State*, 2012 Ark. App. 585. This court, however, subsequently allowed Standridge to lodge his appeal from the conviction. *Standridge v. State*, 2013 Ark. 134. The court of appeals certified the appeal to this court on the grounds that the appeal involved issues of first impression, of substantial public interest, needing clarification of the law or the overruling of precedent, and concerning the interpretation of an act of the General Assembly. Ark. Sup. Ct. R. 1-2(b)(1),

SLIP OPINION

(4), (5), (6) (2014). We have accepted certification of the appeal. We hold that the circuit court lacked subject-matter jurisdiction, and we reverse and dismiss Standridge's conviction.

Our decision in this case turns on the State's decision to charge and try Standridge for violation of a protection order under Arkansas Code Annotated section 9-15-207 (Repl. 2009), rather than the criminal-code provision for violation of a protection order found at Arkansas Code Annotated section 5-53-134 (Supp. 2013). To understand our decision, it is first necessary to describe the respective statutes.

In pertinent part, Arkansas Code Annotated section 9-15-207, which is a statute that is part of The Domestic Abuse Act of 1991, provides as follows:

> (a) Any order of protection granted under this chapter is enforceable by a law enforcement agency with proper jurisdiction.
> (b) An order of protection shall include a notice to the respondent or party restrained that:
>> (1) A violation of the order of protection is a Class A misdemeanor carrying a maximum penalty of one (1) year imprisonment in the county jail or a fine of up to one thousand dollars ($1,000), or both;
>> (2) A violation of an order of protection under this section within five (5) years of a previous conviction for violation of an order of protection is a Class D felony;
>> (3) It is unlawful for an individual who is subject to an order of protection or convicted of a misdemeanor of domestic violence to ship, transport, or possess a firearm or ammunition pursuant to 18 U.S.C. § 922(g)(8) and (9) as it existed on January 1, 2007; and
>> (4) A conviction of violation of an order of protection under this section within five (5) years of a previous conviction for violation of an order of protection is a Class D felony.
> (c) For respondents eighteen (18) years of age or older or emancipated minors, jurisdiction for the criminal offense of violating the terms of an order of protection is with the circuit court or other courts having jurisdiction over criminal matters.

In sum, subsection (a) provides that a law enforcement agency may enforce an order of

SLIP OPINION

protection. Subsection (b) refers to what is included in the notice. Subsection (c) provides that jurisdiction for the "criminal offense" is with the circuit court. In describing the purpose of The Domestic Abuse Act of 1991, Arkansas Code Annotated section 9-15-101 (Repl. 2009) provides:

> The purpose of this chapter is to provide an adequate mechanism whereby the State of Arkansas can protect the general health, welfare, and safety of its citizens by intervening when abuse of a member of a household by another member of a household occurs or is threatened to occur, thus preventing further violence. The General Assembly has assessed domestic abuse in Arkansas and believes that the relief contemplated under this chapter is injunctive and therefore equitable in nature. The General Assembly hereby finds that this chapter is necessary to secure important governmental interests in the protection of victims of abuse and the prevention of further abuse through the removal of offenders from the household and other injunctive relief for which there is no adequate remedy in current law. The General Assembly hereby finds that this chapter shall meet a compelling societal need and is necessary to correct the acute and pervasive problem of violence and abuse within households in this state. The equitable nature of this remedy requires the legislature to place proceedings contemplated by this chapter under the jurisdiction of the circuit courts.

Thus, the statutes provide a "mechanism" by which "injunctive" and "equitable" relief can be sought to protect victims of domestic abuse.

By contrast, section 5-53-134 provides in relevant part:

> (a)(1) A person commits the offense of violation of an order of protection if:
> (A) A circuit court or other court with competent jurisdiction has issued a temporary order of protection or an order of protection against the person pursuant to the The Domestic Abuse Act of 1991, § 9-15-101 et seq.;
> (B) The person has received actual notice or notice pursuant to the Arkansas Rules of Civil Procedure of a temporary order of protection or an order of protection pursuant to the The Domestic Abuse Act of 1991, § 9-15-101 et seq.; and
> (C) The person knowingly violates a condition of an order of protection issued pursuant to the The Domestic Abuse Act of 1991, § 9-15-101 et seq.
> . . . .

3

SLIP OPINION

(b)(1) Except as provided in subdivision (b)(2) of this section, violation of an order of protection under this section is a Class A misdemeanor.
(2) Violation of an order of protection under this section is a Class D felony if:

 (A) The offense is committed within five (5) years of a previous conviction for violation of an order of protection under this section;
 (B) The order of protection was issued after a hearing of which the person received actual notice and at which the person had an opportunity to participate; and
 (C) The facts constituting the violation on their own merit satisfy the elements of any felony offense or misdemeanor offense, not including an offense provided for in this section.

The statute contains the elements the State must prove to obtain a conviction for the crime of violation of a protection order. To sustain a conviction, the State must prove that a circuit court has issued a temporary order of protection or an order of protection against the person, that the person has received actual notice or notice under the Arkansas Rules of Civil Procedure of a temporary order of protection or an order of protection, and that the person knowingly violates a condition of an order of protection. The statute further provides that violation of an order of protection is a Class A misdemeanor. The statute, however, further provides that the offense is a Class D felony if the State further proves that the offense is committed within five years of a previous conviction for violation of an order of protection, that the order of protection was issued after a hearing of which the person received actual notice and at which the person had an opportunity to participate, and that the facts constituting the violation on their own merit satisfy the elements of any felony offense or misdemeanor offense.

The record discloses that on September 2, 2010, the State charged Standridge by information with violation of a protection order under section 5-53-134 as a Class D felony.

4



The State's June 2, 2011 amended information also charged him with a Class D felony and cited to section 5-53-134. On July 22, 2011, however, the State filed an amended information charging Standridge with a Class D felony violation of a protection order, citing section 9-15-207. The information further provided as follows:

> A person commits the crime of Violation of Protection Order if: knowingly a circuit court or other court with competent jurisdiction has issued a temporary order of protection or an order of protection against the person pursuant to the The Domestic Abuse Act of 1991. . . . Committed as follows, to wit: the Defendant did unlawfully and feloniously on or about July 29, 2010, in Mountain Home, Arkansas, called the victim at work on two separate occasions and stated in very explicit terms that "she (victim) pushed him to the edge and she is dead" another call followed in which the defendant stated, "Just remember every person who walks through that door could be someone I've sent." The victim has an order of protection against the defendant until December 2011. The defendant has been previously found guilty of the same offense on April 29, 2010 and July 28, 2009. To Wit: Violation of a Protection Order and Habitual Offender, against the peace and dignity of the State of Arkansas.

At a hearing held the same day, the court granted the State's motion to amend the information. In support of its motion, the State asserted that the amendment "largely changes the number of the statute" and that "our factual allegations are the same but the number of the statute is switched from 5-53-134 to 9-15-207." The court then continued the case.

At a subsequent hearing, Standridge's counsel noted that the case had been continued to allow him to prepare for trial following the State's amendment of the information. Counsel argued that section 5-53-134 was the correct statute to proceed under for a prosecution and not section 9-15-207, which counsel described as a noncriminal statute. Counsel argued that because section 9-15-207 was not a criminal charge, the charge should be dismissed as filed. Counsel asserted that the State had amended the information because section 9-15-207 did

not, as did section 5-53-134, provide that in order to establish a Class D felony, the State must prove that the order of protection was issued after a hearing of which the person received actual notice and at which the person had an opportunity to participate. In reply, the State argued that section 9-15-207 was a criminal statute. The State acknowledged that a hearing on the order of protection was held on December 1, 2009, that Standridge was not present at the hearing, that the order of protection was issued, and that the next day the sheriff returned an unserved notice of the hearing. The circuit court denied the motion to dismiss.

During its opening argument to the jury, the State conceded that the protection order was granted at a hearing held December 1, 2009, that Standridge was not given notice of the hearing, and that he was not present at the hearing. The State then presented evidence from Caroline Wood, who testified that she had obtained the protection order against Standridge. She testified that on July 29, 2010, Standridge had called her at work and said, "You have touched me to the edge. You are a dead bitch, do you understand me? You are dead." Wood acknowledged that Standridge was not present at the December 1, 2009 hearing.

At the conclusion of this testimony, Standridge's counsel moved for a directed verdict, arguing that it was clear from the State's concession that Standridge had not received notice to appear at the December 1, 2009 hearing as required by section 5-53-134. In response, the State argued, "We have proceeded under a different statute that does not require that particular element" and therefore the State had met its burden of proof. The circuit court denied the motion.

Standridge then elicited evidence from the chief deputy circuit clerk from Baxter

6

SLIP OPINION

County Circuit Court that her records indicated that Standridge was not served with the notice for the December 1, 2009 hearing. Standridge's counsel renewed his motion for a directed verdict and his motion to prohibit the amendment to the information. Counsel again argued that Standridge was never served with notice of the December 1, 2009 hearing on the protection order. Counsel further alleged that the court had committed cumulative errors. In response, the State argued that section 9–15–207 was a criminal statute. The court denied the motions.

Standridge's counsel then proffered a jury instruction that counsel asserted was "taken verbatim" from section 5–53–134. The proffered instruction included language that the State must prove that the order of protection was issued after a hearing of which the person received actual notice and at which the person had an opportunity to participate. The State argued that Standridge was instead charged under section 9–15–207 and not section 5–53–134. The court rejected Standridge's proffered instruction and instructed the jury as follows:

> Tracy Standridge is charged with the offense of violation of a protective order. To sustain this charge the State must prove beyond a reasonable doubt that (A) A circuit court or other court with competent jurisdiction has issued an order of protection against Tracy Standridge pursuant to the The Domestic Abuse Act; and (B) That Tracy Standridge has received actual notice or notice of the order of protection; and (C) That Tracy Standridge knowingly violated a condition of an order of protection issued pursuant to the The Domestic Abuse Act. (D) It is a violation if the facts constituting the violation on their own merit satisfy the elements of any felony offense or misdemeanor offense.

We note that while the jury instruction instructed the jury on some of the elements of the offense provided for in section 5–53–134, missing from the jury instruction was language from

section 5-53-134 to the effect that violation of an order of protection is a Class D felony if the offense is committed within five years of a previous conviction for violation of an order of protection and that the order of protection was issued after a hearing of which the person received actual notice and at which the person had an opportunity to participate.

In closing, the State again acknowledged that Standridge did not have notice of the hearing. The jury returned a verdict of guilty but were unable to reach a decision on Standridge's sentence. The circuit court then imposed a sentence of fifty-four months' imprisonment. The court also revoked Standridge's probation. Standridge appealed both the conviction and the probation revocation. The court of appeals affirmed the circuit court's decision to revoke Standridge's probation. Now before this court is Standridge's appeal from the conviction.

On appeal, Standridge raises five issues: (1) that there was insufficient evidence to support the conviction; (2) that the circuit court precluded him from putting on a defense; (3) that the circuit court erred by refusing to give his proffered jury instruction on section 5-53-134 and that the State's instruction was an incorrect statement of the law; (4) that the circuit court erred in denying his motion to dismiss because the State's amended information charged him with violation of section 9-15-207 and not 5-53-134; (5) that the circuit court committed cumulative errors. This court, however, need not consider the merits of each argument on appeal because Standridge was charged and tried under section 9-15-207, a statute that does not describe a criminal offense. Thus, the circuit court lacked subject-matter

SLIP OPINION

jurisdiction, and we reverse and dismiss.

On review, we consider issues of statutory interpretation de novo, and we construe a statute just as it reads, giving the words their ordinary and usually accepted meaning. *State v. Thomas*, 2014 Ark. 362, at 4, 439 S.W.3d 690, 692. In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Id.*, 439 S.W.3d at 692. Statutes relating to the same subject must be construed together and in harmony. *Id.*, 439 S.W.3d at 692.

In construing sections 5-53-134 and 9-15-207, we conclude that section 5-53-134 is the criminal statute under which the State should have charged Standridge to obtain a conviction for Class D felony violation of a protection order. Section 9-15-207 does not contain the elements of Class D felony violation of a protection order; rather, those elements are found in section 5-53-134. As required by section 5-53-134(b)(2)(B), to obtain a conviction for Class D felony violation of a protection order, the State must prove that the order of protection was issued after a hearing of which the person received actual notice and at which the person had an opportunity to participate. By contrast, section 9-15-207 provides that a law enforcement agency may enforce an order of protection, sets out what the notice should contain, and provides that jurisdiction for the "criminal offense" is with the circuit court. Rather than serving as a criminal offense, section 9-15-207 provides the mechanism by which a person can obtain injunctive and equitable relief for protection against domestic abuse. Thus, by charging Standridge under section 9-15-207, the State charged Standridge

under a noncriminal statute.

As is evident from the information, the State's remarks at trial, and the State's jury instructions, the State pursued a course of charging and trying Standridge under section 9-15-207. In doing so, the State sought to avoid the burdens placed on it to prove, as required by section 5-53-134(b)(2)(B), that the order of protection was issued after a hearing at which the person received actual notice and at which the person had an opportunity to participate. Section 9-15-207, however, is not a criminal statute and does not contain the elements of Class D felony violation of a protection order.

A circuit court has subject-matter jurisdiction of all justiciable matters not otherwise assigned pursuant to the constitution. Ark. Const. amend. 80, § 6. Jurisdiction is the power of the court to hear and determine a cause, including the power to enforce its judgment; it is the power to hear and determine the subject matter in controversy between the parties. *State v. Watson*, 307 Ark. 333, 335, 820 S.W.2d 59, 60 (1991), *overruled on other grounds by State v. D.S.*, 2011 Ark. 45, 378 S.W.3d 87. Because jurisdiction is the authority of a court to hear a case on its merits, lack of subject-matter jurisdiction is a defense that may be raised by this court on its own motion. *D.S.*, 2011 Ark. 45, at 4, 378 S.W.3d at 89–90.

In *White v. State*, 260 Ark. 361, 366, 538 S.W.2d 550, 553 (1976), the challenge to the jurisdiction of the trial court, which we observed could be raised at any time, involved a defendant who was convicted of misdemeanor marijuana possession. This court reversed and dismissed after concluding that mere possession of marijuana was not a misdemeanor offense

SLIP OPINION

under the criminal statutes enacted at that time. In interpreting the statute at issue there, the court noted that "the rule of law with respect to statutory construction of penal provisions is that nothing will be taken as intended which is not clearly expressed and all doubts must be resolved in favor of the accused." *Id.* at 366, 538 S.W.2d at 553. In *Holford v. State*, 173 Ark. 989, 1000, 294 S.W. 33, 37 (1927), this court observed,

> There is no better settled rule in criminal jurisprudence than that criminal statutes must be strictly construed and pursued. The courts cannot, and should not, by construction or intendment, create offenses under statutes which are not in express terms created by the Legislature. The courts cannot do so without trenching upon the exclusive functions of the Legislature.

In *Holford*, this court reversed and dismissed a conviction, concluding that while a criminal statute criminalized the manufacture, keeping, and setting up of a still, the statute did not criminalize the manufacturing, keeping, or setting up of a part of a still but which was not a still.

In *Duncan v. Kirby*, 228 Ark. 917, 920–21, 311 S.W.2d 157, 160 (1958), we held that the trial court lacked jurisdiction to try the defendant on the charge of disobeying a United States Army officer because there was no statute criminalizing such conduct. There, we stated,

> We have no statute making it a crime or misdemeanor for the accused to do what he is charged with doing. The writ of prohibition lies where an inferior court is proceeding in a matter beyond its jurisdiction and where the remedy by appeal, though available, is inadequate. And where it appears that an inferior court is about to proceed in a matter over which it is entirely without jurisdiction under any state of facts which may be shown to exist, then the superior court exercising supervisory control over the inferior court may prevent such unauthorized proceedings by the issuance of a writ of prohibition.
> Of course, if there is any question of fact upon which jurisdiction may turn, prohibition will not lie. But here, there is no conceivable finding of fact by which the

11

petitioner could be guilty. He has been found not guilty of disturbing the peace. The remaining charge is simple: That he refused to obey an order of a United States Army officer. There does not appear to be any way in which the charge could be amended or corrected so as to allege a criminal offense in this State. Assuming Lieutenant Tanner's affidavit is true in every detail (except, of course, the disturbing the peace charge, which has been disposed of), still no offense is charged. It simply is not against the law in Arkansas to fail to obey an order of an officer of the United States Army, and it is conceded that Lieutenant Tanner was acting in the capacity of an officer of the United States Army at the time the order is alleged to have been given.

It is said . . . : "A writ of prohibition will lie to restrain a criminal or quasi-criminal prosecution for an offense beyond the jurisdiction of the court.". . . If prohibition will be granted where a court is acting beyond its jurisdiction, how much more so the remedy should be allowed where no offense at all is charged. Our conclusion is that petitioner is not charged with an offense punishable under the laws of this State, and to force him to trial, thereby affording him only the remedy of appeal from a possible conviction, which would be invalid, would not leave him an adequate remedy, and prohibition should be granted.

(Internal citations omitted.)

*White*, *Holford*, and *Duncan* stand for the proposition that a circuit court does not have jurisdiction to try a defendant on a charge that is not a criminal offense and that any conviction obtained must be reversed and dismissed. Criminal statutes must be strictly construed and pursued; otherwise the court trenches upon the functions of the General Assembly. The General Assembly made it clear that section 9-15-207 does not provide for a criminal offense. Admittedly, and unlike *White*, *Holford*, and *Duncan*, there is in Arkansas a crime of Class D felony violation of a protection order. That criminal offense, however, and the elements the State must prove, are found, not in section 9-15-207, but instead in the criminal statute, section 5-53-134. Given the State's citation to section 9-15-207 in the information, the State's remarks at trial, and the State's jury instructions, we cannot engage

in the assumption that Standridge was charged and tried under section 5-53-134. The State instead tried Standridge under section 9-15-207, which, under the State's theory, contained fewer criminal elements and provided for a Class D felony conviction. Even if the State had proved these fewer elements, however, the conduct would not be criminal under section 9-15-207, because that statute is not a criminal statute. In the sense that Standridge's charge and trial were not based on a criminal offense, *White*, *Holford*, and *Duncan* are on point. Thus, because Standridge was tried and convicted for committing acts that, under section 9-15-207, cannot ever constitute a Class D felony, the circuit court lacked subject-matter jurisdiction over the matter. Accordingly, we reverse and dismiss the case.

Reversed and dismissed.

HANNAH, C.J., and CORBIN and DANIELSON, JJ., dissent.

**JIM HANNAH, Chief Justice, dissenting.** I respectfully dissent. Contrary to the majority's assertions, the circuit court had subject-matter jurisdiction over the State's case against Standridge because Arkansas Code Annotated section 9-15-207 (Repl. 2009) is criminal in nature.

Our caselaw is replete with the proposition that jurisdiction is the power of the court to hear and determine subject matter in controversy. *Bliss v. Hobbs*, 2012 Ark. 315 (per curiam); *Culbertson v. State*, 2012 Ark. 112 (per curiam); *Fudge v. Hobbs*, 2012 Ark. 80; *Anderson v. State*, 2011 Ark. 35 (per curiam); *Baker v. Norris*, 369 Ark. 405, 255 S.W.3d 466 (2007). A circuit court has subject-matter jurisdiction to hear and to determine cases

SLIP OPINION

involving violations of criminal statutes. *Watkins v. State*, 2014 Ark. 283, 437 S.W.3d 685; *Bliss*, 2012 Ark. 315. In my view, section 9-15-207, while contained in the Domestic Abuse Act, is a statute that is criminal in nature. This stance is supported by the language of the statute itself, which states in pertinent part, that "jurisdiction for the *criminal offense* of violating the terms of an order of protection is with the circuit court or other courts having jurisdiction over *criminal matters*." Ark. Code Ann. § 9-15-207(c) (emphasis added). Accordingly, the circuit court had subject-matter jurisdiction over the matter.

Further, Arkansas Code Annotated section 9-15-207 provides:

> (a) Any order of protection granted under this chapter is enforceable by a law enforcement agency with proper jurisdiction.
> (b) An order of protection shall include a notice to the respondent or party restrained that:
> (1) A violation of the order of protection is a Class A misdemeanor carrying a maximum penalty of one (1) year imprisonment in the county jail or a fine of up to one thousand dollars ($1,000), or both;
> (2) *A violation of an order of protection under this section within five (5) years of a previous conviction for violation of an order of protection is a Class D felony*;
> (3) It is unlawful for an individual who is subject to an order of protection or convicted of a misdemeanor of domestic violence to ship, transport, or possess a firearm or ammunition pursuant to 18 U.S.C. § 922(g)(8) and (9) as it existed on January 1, 2007; and
> (4) *A conviction of violation of an order of protection under this section within five (5) years of a previous conviction for violation of an order of protection is a Class D felony*.
> (c) For respondents eighteen (18) years of age or older or emancipated minors, jurisdiction for the *criminal offense* of violating the terms of an order of protection is with the circuit court or other courts having jurisdiction over *criminal matters*.
> (d)(1) In the final order of protection, the petitioner's home or business address may be excluded from notice to the respondent.
> (2) A court shall also order that the petitioner's copy of the order of protection be excluded from any address where the respondent happens to

SLIP OPINION

reside.

(e) A law enforcement officer shall not arrest a petitioner for the violation of an order of protection issued against a respondent.

(f) *When a law enforcement officer has probable cause to believe that a respondent has violated an order of protection and has been presented verification of the existence of the order of protection, the officer may arrest the respondent without a warrant whether or not the violation occurred in the presence of the officer if the order of protection was obtained according to this chapter and the Arkansas Rules of Criminal Procedure.*

(g) An order of protection issued by a court of competent jurisdiction in any county of this state is enforceable in every county of this state by any court or law enforcement officer.

(Emphasis added.)  Here, the plain language of the statute expressly states that a violation of an order of protection within five (5) years of a previous conviction is a Class D felony; that violation of an order of protection is a "criminal offense"; and that the Arkansas Rules of Criminal Procedure govern when the officer arrests a respondent without a warrant.

This reading is further supported by the legislature's intent.  In 2009, the Arkansas General Assembly saw fit to amend section 9-15-207, and in addition to the plain language of the Act, the emergency clause is instructive.  This court has held that it is a rule of statutory construction that the emergency clause of an act can be used in determining the intent of the legislature.  *See, e.g.*, *Rosario v. State*, 319 Ark. 764, 894 S.W.2d 888 (1995).  The emergency clause of Act 331 of 2009 reads as follows:

SECTION 3.  EMERGENCY CLAUSE.  It is found and determined by the General Assemby of the State of Arkansas that domestic violence is on the rise and poses a danger to the public; that increasing the penalty for repeat offenders aids both law enforcement and the victims of domestic violence and that this act is immediately necessary because *current enforcement and prosecution will be greatly aided by the new, more serious penalties for those persons who repeatedly violate orders of protection*, therefore, an emergency is declared to exist and this act being immediately necessary for the preservation of the public peace, health,

and safety shall become effective[.]

Act of Mar. 10, 2009, No. 331, § 3, 2009 Ark. Acts 1320, 1322-23 (emphasis added). Thus, it is clear from a review of the plain language of the statute and the emergency clause of Act 331 of 2009 that the Arkansas General Assembly intended to criminalize and to prosecute the behavior of those persons like Standridge who violate an order of protection in domestic-abuse cases. Given the application of section 9-15-207 to the facts of Standridge's case, I would affirm his conviction and sentence.

CORBIN and DANIELSON, JJ., join.

*Paul J. Teufel*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.