15593

STATE v. REAVES

(28 S. E. (2d), 91)

*Mr. W. D. Jenerette,* of Mullins, S. C., Counsel for Appellant,

*Hon J. Reuben Long,* Solicitor, of Conway, S. C., appeared for The State, Respondent.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

The defendant was convicted of the offense of manufacturing alcoholic liquors without a license, and sentenced to twelve months' imprisonment, or to pay a fine of $750.00. He pleaded not guilty, and set up the defense of alibi.

A motion was made for the direction of a verdict of not guilty at the close of all of the evidence, and reversal is sought upon the ground that there is no evidence showing the guilt of the defendant.

On March 28, 1941, about 9:30 o'clock in the morning, two deputy sheriffs of Marion County, Wayne Norton and Rollie Smith, while passing the home of the defendant, Reaves, in their automobile, saw him approaching the highway in his car. As the deputies passed, they noticed some sacks and other things on the back seat of defendant's car, but at that time could not identify the articles as being corn or sugar or both. At any rate, their suspicions were aroused. They observed him through the rear vision mirror drive across the highway into the woods on the other side. They

thereupon turned and followed him at a discreet distance. When the defendant had proceeded about two or three hundred yards, he stopped the car, got out, and the deputies saw him putting sugar and meal into several barrels; the sugar amounted to about 175 pounds. As the deputies approached the spot, the defendant jumped into his car and decamped.

The officers immediately communicated with the sheriff of the county, and when he arrived on the scene they made a thorough search of the woods. At the place where the defendant had been seen, seven barrels were discovered, buried in the ground, containing meal and sugar, and covered with pine straw. The defendant's truck was likewise there, in which were several mash barrels, and all of them smelled of whiskey. Farther in the woods about 200 yards away, the officers found 36 barrels or kegs, some of which contained beer and mash. They found at this point the site where a still had been set up and a pump had been put down. The distilling apparatus had been taken away.

Before the sheriff arrived, one of the deputies saw two sons of the defendant leave his house, located about 200 yards away, each with something in his arms. These boys were watched, and they were seen to turn around and stop close to a tobacco bed. When this place was searched the deputies found two kegs, each containing ten gallons of what they called monkey rum or stump-hole liquor. The officers then obtained a search warrant and searched the dwelling house and premises of the defendant. They found in his yard nine kegs, and numerous empty jars. Some of the kegs had a strong odor of whiskey. These kegs were similar to the two in which they found the twenty gallons of whiskey. In the smokehouse they found 225 pounds of sugar and a copper worm, used in the equipment of a still to condense the whiskey.

The defendant operated a barbecue stand about 75 yards from the place where the officers said they saw him mixing the sugar and meal, and the evidence tends to show that the

barrels of mash, the still site, the pump, and the defendant's truck were all on land rented, used or controlled by him.

The two questions involved in the appeal may briefly be stated thus: First, was it the defendant that the officers saw mixing sugar and meal at the mash barrels? Second, if the person seen there was the defendant, was he guilty of manufacturing liquor?

With reference to the first question, the defendant sought unsuccessfully to establish the defense of alibi.

Under the evidence, the jury was amply warranted in finding that the appellant was the man that the officers saw mixing the ingredients used in the manufacture of liquor.

It is contended, however, that even if it be admitted that the person seen at the mash barrels was in fact the defendant, and that he was mixing sugar and meal in the barrels, this would not constitute manufacturing liquor.

In *State v. Quick,* 199 S. C., 256, 19 S. E. (2d), 101, 102, which was a case involving a prosecution for the unlawful manufacture of alcoholic liquors, we stated that the law does not concern itself with mere guilty intention unconnected with any overt act; that no definite rule as to what constitutes an overt act can safely be laid down in cases of this kind, each case being dependent upon its own particular facts. The Court further said: "It is well settled that the 'act' is to be liberally construed, and in numerous cases it is said to be sufficient that the act go far enough toward accomplishment of the crime to amount to the commencement of its consummation. While the efficiency of a particular act depends on the facts of the particular case, the act must always amount to more than mere preparation, and move directly toward the commission of the crime. In any event, it would seem, the act need not be the last proximate step leading to the consummation of the offense."

The difficulty generally is in determining the proximity of the act in question to the offense in contemplation.

In the *Quick case,* the defendant was arrested by the officers at a point more than 100 yards from a still, while approaching in an automobile which contained the ingredients used in the manufacture of liquor. It was evidently the intention of the defendant in that case to manufacture liquor, but the still was not in operation; and we held that the testimony showed nothing more than an act on the part of the defendant, preparatory to the commission of the crime. He had committed no overt act in the process of manufacture, as was done in *State v. Ravan,* 91 S. C., 265, 74 S. E., 500.

The testimony in the case at bar is quite different. Here it is shown that the appellant was clearly engaged in one of the initial steps involved in the manufacture of the finished product. It must be remembered that manufacturing is a continuing process, and the State is not obligated to wait until the last step in the process has been taken.

Many definitions of the word "manufacturing" are to be found in the books, but most of them are of little help upon the question here presented; for we must construe the meaning here, having in mind its sense in connection with the prohibition imposed. The purpose of our statute is to prohibit the manufacture of intoxicating liquors without a license, and it reaches and stops all steps in the actual process of manufacturing up to and including the finished product. Code 1942, § 1845. The defendant lays great stress upon the fact that no still was actually found, and for that reason he could not be convicted of manufacturing alcoholic liquor. There was evidence from which the jury could infer that liquor had recently been made, and that twenty gallons of it had been taken from plaintiff's house and hidden in the tobacco bed while the woods were being searched. There was evidence from which the jury could infer that a still had been operated not long before the officers arrived, and that it had been disassembled and hidden away. The officers discovered a copper worm condenser, which is

used in the distilling of whiskey, in the defendant's smoke-house. Barrels of mash, evidently in a state of fermentation, were found at the still site; so was the pump from which water was obtained for the boiler. The question naturally arises under the evidence, what was the defendant doing if he was not engaged in the process of manufacturing liquor when he was found actively mixing sugar and meal in close proximity to the still site and amidst all of these kegs and barrels, which smelled of whiskey. The facts and the reasonable inferences therefrom point unerringly to guilt.

We would have to be unusually credulous if we did not conclude from the evidence that the defendant was actually engaged in the overt act of the manufacturing process, and the conclusion is inevitable that he had the means at hand to produce the furnished product. Otherwise, we would have to believe that he was merely playing in the woods with meal and sugar, which would be an absurdity. Impossibility of continuing the manufacturing process arose not from the absence of the still, but because the officers appeared upon the scene.

Evasions, subterfuge, and trickery are the very essence of this offense, and when a party who has taken every step to violate the law is caught in the very act of manufacturing liquor, whether it be the first, an intermediate, or the last step in the process, he should not escape punishment when the facts establish guilt beyond a reasonable doubt. The jury so found in this case, and the lower Court committed no error in submitting the issue to them.

The defendant complains about the alleged severity of the sentence. The sentence is within the limits fixed by the law, and we find no error.

Judgment affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGES WM. H. GRIMBALL and L. D. LIDE, ACTING ASSOCIATE JUSTICES, concur.