15931

STATE v. JACKSON *ET AL.*

(42 S. E. (2d) 230)

*Messrs. George K. Laney* and *James E. Leppard,* of Chesterfield, for Appellants, cite:

*Mr. Sidney S. Tison,* Solicitor, of Bennettsville, for Respondent, cites:

March 31, 1947.

BAKER, CJ.: The appellants were tried at the June, 1946, term of General Sessions Court for Chesterfield County on an indictment charging them with the unlawful manufacture of alcoholic liquors. They were found guilty by the jury and this appeal followed.

At the conclusion of the testimony on the part of the State the appellants moved for a directed verdict of acquittal on the grounds that there was no evidence to show that either of the defendants was engaged in the manufacture of alcoholic liquors, which motion was refused, and it is from the refusal of such motion that the first of the two questions submitted to this Court stems. The precise question raised is: "Were the facts adduced by the State sufficient to constitute the offense of 'unlawful manufacture of alcoholic liquors' within the meaning and intendment of Section 1845 of Volume 1 of the Code of Laws of South Carolina, 1942?" It is, therefore, necessary that we briefly refer to the testimony on behalf of the State.

By reason of information which had been received by the officers of the law in Chesterfield County, three of the deputy sheriffs of said County went to the vicinity in which the appellants were living alone on a small tract of land, on which was situate a more or less dilapidated residence and barn, and commenced to search in and around the premises and adjacent lands. Neither of the appellants was home at the time. The officers followed a sled track from the barn at the house where the appellants lived, across a field, or lands which they were cultivating in either cotton or corn, to the woods and the swamp, and on into the swamp and to the banks of a stream known in that neighborhood as Bear Creek, this being a distance of about five hundred yards from the residence and barn aforementioned. At the end of the trail of the sled on the banks of Bear Creek, but on land over which the appellants had no control, the officers found what they described as a complete manufacturing outfit, a still characterized as a "submarine type" (of which this Court has no knowledge), containing "buck or mash" which had reached the stage of fermentation where it was practically ready to "run"; and according to the officers, with the type still that was being used, all that was necessary thereafter was to put the fire under it. There was also found at this place a new lard can that did not have any top for it, but a new top which fitted this lard can was found at the residence of the appellants, wrapped up in a piece of paper. The vat containing the "buck or mash" as described by the officers, was made partially from wood or lumber, with a metal bottom, and it was stated by the officers that after the necessary fermentation had taken place of the mash in this wooden vat, that all that was necessary was to build a fire thereunder. The part that the new lard can would play in the manufacture of whiskey is probably explained by the following testimony of officer King: "They had a new lard can that they were using at the still with a hole in it where they run the pipe in and I guess that was used for the cap, stuck the pipe down in there, * * *". In

the barn at the house occupied by appellants, the officers found some lumber, or pieces of lumber which they compared with pieces of lumber out of which the vat or still was constructed, and these pieces of lumber found in the barn and the lumber out of which the still or vat was constructed, corresponded as to the grain and saw marks made by the saw when it was manufactured. In making this distillery outfit, it appears from the testimony to have been necessary to mix up a clay which was denominated as white chalk, and daub it over and around the still to keep the steam from coming out, and on the handle of an axe at the home of appellants there was found white chalk or clay, which corresponded with that around the still. In addition to the sled trail from the barn of the appellants to the site of the still, there were tracks where someone had walked, and about half way between the still and a little ditch out in the field towards the home of appellants, the officers found some Coca Cola one-gallon jugs. The house where the appellants lived, and the small farm adjacent thereto, had been owned by the deceased wife of the appellant, Drew Brown, and we assume at the time in question, was owned by her heirs, Drew Brown and their three children, the latter, it is testified, residing with the mother of said appellant.

We attach no particular significance to the fact that a sled was found on the premises of the appellants in that sleds of this character are used quite often to drag fertilizer into fields being cultivated in that section of the State (and possibly other sections) ; and the officers testifying for the State made no comparison as to whether the track made by the runners of the sled from the premises of appellants to the still corresponded with the runners of the sled found there, although one of the officers, despite this, testified that "it looked like the same sled that made the track." (We presume that unless there is something unusual about the runners of these "home-made" sleds, the tracks made by all of them would resemble.)

The still was not in actual operation at the time it was found in that no fire had been built, but one officer testified that there were ashes there, indicating that it had been operated at some time prior.

The foregoing is a brief summation of the testimony on behalf of the State.

Except for the testimony that ashes were there, which evidenced that the still had been used for the manufacture of whiskey, this case might come within the reasoning of the dissenting opinion of the late Mr. Justice Hydrick in *State v. Ravan*, 91 S. C. 265, 74 S. E. 500, where it was stated: "In misdemeanors, where an attempt is not an indictable offense, the law recognizes the existence of the point of repentance; and hence, unless the statute expressly makes the attempt or the engaging in the process of manufacturing liquors a crime, one is not guilty of violating the law, until the manufacture is completed, because he could repent at any moment, short of completing the process, stop and save himself from the penalty of the law."

Ordinarily the manufacture of alcoholic liquors would contemplate the finished product, but the rule has been established in this State that an overt act in the process of manufacturing is sufficient to show unlawful manufacture, and that each case must be decided dependent upon its particular facts, especially as to the issue whether a verdict of acquittal should be directed.

In *State v. Brock*, 126 S. E. 765 (Decided by the Supreme Court of this State on October 4, 1923, but not reported in the S. C. Reporter), the defendant-appellant was convicted of violating the prohibition law. The evidence in that case tended to show the finding of a still and some whiskey in the vicinity of defendant's house, and tracks leading therefrom to defendant's house, and a wagon containing two barrels of still beer standing in front of defendant's house. These meager facts are all that are shown by the report of the case, but this Court, in an opinion by the late

Mr. Justice Cothran as its organ, held that the evidence of the defendant's guilt was insufficient to justify the submission of the case to the jury.

In *State v. Quick,* 199 S. C. 256, 19 S. E. (2d) 101, the refusal of the trial Judge to direct a verdict of acquittal was reversed upon the ground that the evidence was insufficient to establish the defendant's guilt of the unlawful manufacture of alcoholic liquors beyond a reasonable doubt. The facts of that case are set out in the opinion as follows: "On the morning of May 12, 1941, certain officers of Marlboro County found two stills on the property of the defendant in that county, with complete paraphernalia for the distillation of intoxicating liquor. These stills were located about 100 yards from the dead end of a road which led from the State highway into the woods. A pathway ran from the end of the road to the site of the stills. After watching and waiting around the stills for some time, they went to their car, which was parked in the bushes, and backed out upon the road to which we have referred. This road was narrow, and as they started forward they met an approaching automobile owned by the defendant, Shuford Quick, and occupied by him and two young men, and two little children. This car contained 500 pounds of sugar, a sack of mill feed, and three cases of yeast cakes. The appellant and the two young men were promptly arrested and placed in jail. The officers stated that neither of the stills was in operation. One, however, contained mash, and the other appeared to have been recently operated. Two cases of fruit jars were found at the stills, and a little whiskey or wine in a fruit jar. The officers further testified that they did not know to whom the stills belonged. They were located, as already stated, upon land owned by the appellant, and it was testified that his home was in the opposite part of the county."

This Court, after stating the above facts, had this to say:

"We think there can be no doubt but that the evidence overwhelmingly tends to show an intention on the part of

the appellant to manufacture liquor; certainly such inference may reasonably be drawn. But intent alone, not coupled with some overt act toward putting the intent into effect, is not cognizable by the Courts. The law does not concern itself with mere guilty intention, unconnected with any overt act. *State v. Kelly,* 114 S. C. 336, 103 S. E. 511; 14 Am. Jur., Sec. 25, page 786.

"No definite rule as to what constitutes an overt act can safely be laid down in cases of this kind. Each case must depend largely upon its particular facts and the inferences which the jury may reasonably draw therefrom, subject to general principles applied as nearly as can be, with a view to working substantial justice.

"It is well settled that the 'act' is to be liberally construed, and in numerous cases it is said to be sufficient that the act go far enough toward accomplishment of the crime to amount to the commencement of its consummation. While the efficiency of a particular act depends on the facts of the particular case, the act must always amount to more than mere preparation, and move directly toward the commission of the crime. In any event, it would seem, the act need not be the last proximate step leading to the consummation of the offense. 22 C. J. S., Criminal Law, Section 75, page 139."

In the case of *State v. Reaves,* 203 S. C. 501, 28 S. E. (2d) 91, the involved facts are stronger against the defendant-appellant than the facts in the *Quick case* just above referred to, and this Court refused to reverse a verdict of guilty on the ground that a motion for a directed verdict of acquittal should have been granted by the trial Judge. In discussing the case of *State v. Quick, supra,* it was pointed out that the law does not concern itself with mere guilty intention unconnected with any overt act; but in the case under discussion (*State v. Reaves*), after recognizing that the efficiency of a particular act depends on the facts of the particular case, it is stated that such act must amount to more

than mere preparation and move directly toward the commission of the crime. We quote from the opinion:

"Here it is shown that the appellant was clearly engaged in one of the initial steps involved in the manufacture of the finished product. It must be remembered that manufacturing is a continuing process, and the State is not obligated to wait until the last step in the process has been taken.

"Many definitions of the word 'manufacturing' are to be found in the books, but most of them are of little help upon the question here presented; for we must construe the meaning here, having in mind its sense in connection with the prohibition imposed. The purpose of our statute is to prohibit the manufacture of intoxicating liquors without a license, and it reaches and stops all steps in the actual process of manufacturing up to and including the finished product. Code 1942, Section 1845."

Having reference to the facts hereinbefore set forth, it will be seen that there was testimony tending to show that the initial steps involved in the manufacture of alcoholic liquors had been taken; that the mash in the vat had nearly reached the stage of fermentation when all that remained to be done was to build a fire thereunder, so that therefore, under the cases of *State v. Quick, supra,* and *State v. Reaves, supra,* an overt act in the process of manufacture had been committed, if the jury believed the testimony of the officers of the law, and we, therefore, under this testimony, coupled with the other circumstantial evidence in the case, are of the opinion that the trial Judge did not commit error in submitting the case to the jury for its determination.

The second issue raised by this appeal, to wit, was there error in the trial Judge's special instruction to the jury as to what constitutes manufacturing, after the jury had retired to deliberate, and at its special request, gives us concern. He had, in his general charge, correctly charged the law relating to the manufacture of alcoholic

liquor, but when the jury requested an additional charge, in defining what constituted manufacturing, the trial Judge's instruction was in part contradictory of his general charge, and to an extent contrary to the decision of this Court in *State v. Quick, supra.* This special instruction reads as follows: "* * * manufacturing, as I charged you a few minutes ago, does not necessarily mean the completion of the product. Manufacturing is simply putting the elements of raw material together, having the appliances with intent to complete the job. If the raw materials going into the finished product have been put together, the means of manufacturing at hand and the intent to complete the job, you have the offense of manufacturing, having the manufacturing complete in so far as the offense of manufacturing whiskey is concerned."

Except for the undisputed testimony that the mash had been placed in the vat, and had reached the stage of fermentation where it was about ready for a fire to be built under this "submarine still," this incorrect statement of the law of what constitutes manufacturing liquor under our statute and the decisions of this Court, and being delivered at the time it was, would have constituted reversible error. In other words, it could not be classified as harmless error but for the testimony in this case. In the writer's opinion, it is seldom indeed that error in the trial Judge's charge or in his rulings during the trial of a criminal case can be properly held to be "harmless error." This appears to be one of the few instances where such conclusion can be reached, and not be bottomed upon surmise and conjecture.

In fairness to the appellants, we should state that they denied any knowledge of this still and of its presence in the vicinity of their humble home.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.